**The STATE of Ohio, Appellee,**

**v.**

**DIDION, Appellant.**

[Cite as *State v. Didion,* 173 Ohio App.3d 130, 2007-Ohio-4494.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–06–25.

Decided Sept. 4, 2007.

132

Kenneth Egbert Jr., for appellee.

Jonathan G. Stotzer, for appellant.

WILLAMOWSKI, Judge.

{¶ 1} The defendant-appellant, Max Didion, appeals the judgment of conviction and sentence filed by the Seneca County Common Pleas Court.

{¶ 2} On November 13, 2005, at approximately 3:30 a.m., Didion was operating a Dodge pickup truck southbound on State Route 67 near the village of Melmore in Seneca County. At the intersection of State Route 67 and County Road 1066, Didion lost control of the truck, which left the roadway, traveled through a patch of grass, a church parking lot, and a grass yard, and then struck a residence. The truck was completely inside the home when it came to rest. The collision injured Richard Dible and Christina Wollett, as well as their eight-year-old daughter, Richelle Dible, who later died from her injuries. Several other children in the home escaped unharmed. The truck eventually caught fire, causing the home to ignite. Although he was also injured, Didion assisted in removing the victims from the home, and firefighters suppressed the fire.

{¶ 3} On the night of the collision, the temperature was approximately 50 degrees, the skies were overcast, it was raining, and there were wind gusts of up to 21 miles per hour. Due to these weather conditions and the darkness, visibility was poor. The posted speed limit on State Route 67 is 55 miles per hour; however, near the village limits, there is a curve in the road. Because the curve begins at the intersection of State Route 67 and County Road 1066, the intersection is at an odd angle. Approximately two-tenths of a mile before the curve, the state posted a road sign warning motorists of the upcoming curve and advising a speed limit of 30 miles per hour in the curve. Closer to the curve is another road sign, reducing the speed limit on State Route 67 to 45 miles per hour.

{¶ 4} Didion told investigators that he had been operating the vehicle at 56 or 57 miles per hour, and he apparently took a portable breath test at the scene, which indicated a blood-alcohol content of .143. Later that morning, Didion was transported to the police station, where officers attempted to administer a breath-alcohol test. After some manipulation of the device, Didion eventually refused to

take the test. The officers obtained a search warrant for a blood sample, drew the blood sample, and tested it. The test revealed a blood-alcohol content of .072.

{¶ 5} On December 8, 2005, the Seneca County Grand Jury returned a seven-count indictment against Didion. The indictment charged Didion as follows: count one, aggravated vehicular homicide, a violation of R.C. 2903.06(A)(1), a second-degree felony; counts two and three, aggravated vehicular assault, violations of R.C. 2903.08(A)(1)(a), third-degree felonies; count four, aggravated vehicular assault, a violation of R.C. 2903.06(A)(2)(b), a third-degree felony; counts five and six, vehicular assault, violations of R.C. 2903.08(A)(2)(b), fourth-degree felonies; and count seven, improper handling of firearms in a motor vehicle, a violation of R.C. 2923.16(D)(1), a fifth-degree felony. Didion pleaded not guilty to each of the offenses at arraignment.

{¶ 6} Eventually, the case proceeded to jury trial, and the court permitted a jury view of the crime scene during daylight hours, over Didion's objection. After seven days of trial, the jury returned guilty verdicts on counts four, five, and six. At the sentencing hearing on July 6, 2006, the trial court ordered Didion to serve an aggregate prison term of five years and three months.[1] The court also ordered Didion to pay restitution in the amount of $162,809.50. Didion appeals the court's judgment, setting forth five assignments of error for our review.

### First Assignment of Error

The trial court erred in ordering restitution for $2000 engagement ring and $7000.00 Ford truck.

### Second Assignment of Error

The trial court erred in ordering restitution of $162,809.50 without inquiry into the defendant's ability to pay per O.R.C. 2929.18 and 2929.19(B)(6).

### Third Assignment of Error

The trial court erred in ordering restitution of $162,809.50 without verification of the values of personal property items purportedly lost or destroyed.

### Fourth Assignment of Error

The trial court erred and abused its discretion in granting state's motion for a daylight jury view of the accident scene.

---

1. The trial court imposed a prison term of four years on count four, 15 months on count five, and 15 months on count six. The court ordered Didion to serve the prison terms on counts four and five consecutively and ordered the prison term for count six to be served concurrent to the prison terms for counts four and five.

### Fifth Assignment of Error

The trial court erred and abused its discretion under 2929.14 and 2929.41 in sentencing the defendant [to] consecutive sentences which exceeded the maximum sentence for the most serious conviction.

██ {¶ 7} For ease of analysis, we elect to address the assignments of error out of order. In support of the fourth assignment of error, Didion contends that the trial court abused its discretion by allowing a daytime jury view of the crime scene. Didion contends that several road signs at the time of the collision had been replaced with new signs, some of which contained lower speed limits than those existing on the night of the collision. Although the state had the original information displayed on the signs prior to the jury view, Didion contends that those signs were not the exact signs that were in place on November 13, 2005, and therefore, the jury did not have an accurate sense of the reflective nature of the signs due to the variance in reflectivity among road signs. Didion argues that recklessness was a material element of the offenses for which he was convicted, and therefore, the jury was entitled to view the scene under the same conditions that existed at the time of the collision, specifically, at night and with the same presence or absence of reflectivity on the road signs. Didion contends that at the very least, the trial court should have given the jury a cautionary instruction concerning the changed conditions.

{¶ 8} In response, the state contends that the trial court did not abuse its discretion. The state argues that a jury view is not evidence, and the court visited the scene with counsel prior to its decision to allow a jury view. To support its argument concerning the reflective nature of the road signs, the state contends that Didion produced no evidence other than his bare assertion.

██ {¶ 9} R.C. 2945.16 governs jury views and states:

When it is proper for the jurors to have a view of the place at which a material fact occurred, the trial court may order them to be conducted in a body, under the charge of the sheriff or other officer, to such place, which shall be shown to them by a person designated by the court.

What the jury observes when viewing a crime scene " 'is not considered evidence, nor is it a crucial step in the criminal proceedings.' " *State v. Frost* (Nov. 13, 1998), 2nd Dist. No. 16564, 1998 WL 864907, quoting *State v. Hopfer* (1996), 112 Ohio App.3d 521, 679 N.E.2d 321, citing *State v. Richey* (1992), 64 Ohio St.3d 353, 367, 595 N.E.2d 915; *State v. Smith* (1993), 90 Ohio App.3d 177, 180, 628 N.E.2d 120. The trial court has broad discretion in allowing or denying a jury view, and its judgment will not be disturbed on appeal absent an abuse of discretion. *Frost,* quoting *Hopfer,* 112 Ohio App.3d at 542, 679 N.E.2d 321, citing *Richey,* 64 Ohio St.3d at 367, 595 N.E.2d 915, citing *State v. Zuern* (1987), 32 Ohio St.3d 56,

58, 512 N.E.2d 585, 588. An " 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 10} On April 10, 2006, the state filed a motion requesting a jury view of the crime scene. The state filed a second motion on April 18, 2006, specifically requesting a jury view during daylight hours. Didion responded on April 27, 2006, by filing a "submission of legal authority regarding request for jury view." In that document, Didion requested that the court conduct a jury view in the dark, so the jurors could see the scene under circumstances similar to or the same as those that existed on the night of November 13, 2005. The trial court held a hearing on the parties' requests. At the hearing, Didion brought certain issues to the court's attention concerning the crime scene. Specifically, he noted that an agent of the state had recently painted letters on the ground as reference points, somebody had placed a statue of an angel near the residence, and the road signs had been changed. As to the road signs, Didion told the court that the recommended speed on the "curve ahead" warning sign had been reduced from 30 m.p.h. to 25 m.p.h., a "curve ahead" warning sign had been installed on the left side of the road as an additional caution, and the 45 m.p.h. speed-limit sign had been replaced with a brand-new one. Didion voiced concern that a new speed-limit sign would be more reflective than an older sign, which would have lost some of its reflectivity due to aging in the weather, and therefore, the difference in reflectivity might skew the jurors' perceptions as to recklessness. Additionally, Didion requested that if the court agreed to conduct a jury view, it should take place at night.

{¶ 11} The judge asked counsel whether he could view the crime scene prior to reaching his decision, and both attorneys agreed to accompany the judge to the scene later that day. After the judge and counsel had visited the crime scene together, they returned to the courthouse and continued the hearing. The court ordered that the recommended speed on the "curve ahead" warning sign be replaced with a 30 m.p.h. sign, that the "curve ahead" warning sign on the left side of the road be removed, that the angel statue be removed from the residence, and that the reference letters be removed or painted over prior to the jury view. The court denied Didion's request for a nighttime jury view "for safety reasons and other reasons." The court found that photographs taken in the dark shortly after the collision would sufficiently apprise the jury of the conditions on the night of November 13, 2005, and that the defense had the same opportunity as the state to produce photographic evidence. The court was not concerned about any potential differences in the reflectivity of the road signs or any difference between the original 45 m.p.h. sign versus the brand new 45 m.p.h.

sign. The court conducted the jury view on the first day of trial, after the scene had been restored pursuant to its orders.

{¶ 12} As stated above, what the jury observes during a jury view is not considered evidence; it is merely to help the jury better understand the circumstances and to put the evidence into perspective. The trial court ordered the reference letters and the angel statue removed from the scene so as to avoid the jury's seeing "evidence" during the jury view or being prejudiced in favor of the state. The trial court ordered road signs to be replaced so they appeared to be as close to original as possible. Because the jury viewed the scene during the day, the reflective nature of the signs would not be as noticeable as it would have been at night. Furthermore, the trial court stated safety concerns as a reason why the jury view should be conducted during the day. The "other reasons" mentioned by the court could have included the additional expense and impracticality of gathering the jury, the court and its staff, counsel, and sheriff's deputies after dark. On this record, the trial court gave good reasons for conducting the jury view during the day, and it took reasonable precautions to ensure that the scene appeared as it had been on the night of November 13, 2005.

{¶ 13} Because a jury view has no probative value and because the trial court took the precautions mentioned above, the court did not abuse its discretion in granting the state's motion for a daytime jury view. See, generally, *Frost* (allowing a nighttime jury view of the crime scene would have denied jurors the opportunity to assess witness credibility as to the crime scene and allowed jurors to draw their own conclusions about the witnesses' ability to identify the defendant); *State v. Day* (Dec. 30, 1986), 4th Dist. No. 1265, 1986 WL 15204 (no prejudicial error or abuse of discretion in the trial court's order granting a daytime jury view of the crime scene because there was "ample testimony" concerning the lighting at the time of the crime, and defense counsel had the opportunity to cross-examine the witnesses). A defendant is entitled to a fair trial, not a perfect trial, and the court's decision on the jury view did not result in an unfair trial. *State v. Jones* (2000), 90 Ohio St.3d 403, 422, 739 N.E.2d 300. Because we have found no abuse of discretion, the fourth assignment of error is overruled.

{¶ 14} The first and third assignments of error are interrelated and will be addressed together. Didion argues that the state did not produce evidence to verify the amount of restitution requested, specifically as to a lost engagement ring and damage to a Ford truck. In response, the state contends that the trial court may, and did, base its decision on the victim's estimate of damages. The state also argues that the victims' advocate "confirmed" the victims' damages and that Didion did not present any evidence to dispute the amount requested.

{¶ 15} We must apply the law in effect at the time of the collision. *State v. Christy*, 3d Dist. No. 16–06–01, 2006-Ohio-4319, 2006 WL 2390273, at ¶ 7, fn. 1, citing *State v. Bonanno*, 3d Dist. No. 1–02–21, 2002-Ohio-4005, 2002 WL 1801781, at ¶ 10. Because the offense occurred on November 13, 2005, we must apply R.C. 2929.18 as amended in 125 Am.Sub.H.B. No. 52, which became effective on June 1, 2004. Former R.C. 2929.18(A)(1) provided:

[T]he court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section * * *. Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender.

The court may order that the offender pay a surcharge of not more than five per cent of the amount of the restitution otherwise ordered to the entity responsible for collecting and processing restitution payments.

The victim or survivor may request that the prosecuting attorney file a motion, or the offender may file a motion, for modification of the payment terms of any restitution ordered. If the court grants the motion, it may modify the payment terms as it determines appropriate.

Former R.C. 2929.18(A)(2) and (3) provided for fines and court costs, respectively.

{¶ 16} During sentencing, the state marked State's Exhibit 1 and offered it into evidence. Didion objected to the admission of State's Exhibit 1, arguing that the state essentially sought forfeiture of his money and that restitution cannot be

based on an unauthenticated document. Due to Didion's objections, the court held a restitution hearing as part of the sentencing hearing. Didion also objected to the amount of restitution ordered by the trial court, thereby preserving the issue for appellate review. We must review the trial court's order for an abuse of discretion. See *State v. Esterle*, 9th Dist. No. 06CA0003–M, 2007-Ohio-1350, 2007 WL 879653, at ¶ 5, citing *State v. Myers*, 9th Dist. No. 06CA0003, 2006-Ohio-5958, 2006 WL 3257488, at ¶ 12. See, also, *State v. Robinson*, 3d Dist. No. 5–04–12, 2004-Ohio-5346, 2004 WL 2260101, at ¶ 19.

{¶ 17} During the restitution hearing, the state presented testimony from Candi Sauber, the victims' advocate, and Christina Wollett. Sauber testified that the total request for restitution was $162,809.50. She stated that $129,390.25 was due to Blue Cross/Blue Shield for Richard's and Richelle's medical expenses; that $4,329.36 was due to the Ohio Department of Job and Family Services ("DJFS") for Christina's medical expenses, which had been covered by Medicaid; that $6,269.66 was due to the First National Bank of Sycamore, in care of the Richelle Dible Fund, for funeral expenses; that $3,088.23 was due to Richard for out-of-pocket medical expenses; and that $20,732 was due to Christina for personal-property losses. Sauber testified that she instructed Christina to list the personal-property that had been damaged due to the collision, fire, smoke, and/or water. She also told Christina "to make a list of items that was [sic] there that cannot be used, cannot be fixed, is [sic] dirty, is [sic] filthy, or yucky or whatever." Sauber instructed Christina to estimate a "fair amount" for each item's value.

{¶ 18} On cross-examination, Sauber testified that the personal-property values had not been verified and that there had been no inspection or appraisal of the personal property claimed. She testified that she had no information as to whether the victims' personal items were insured. Sauber testified that nobody had seen or valued the claimed engagement ring, valued by Christina at $2,000. She also testified that Christina valued damages to a 1997 Ford truck at $7,000; however, Sauber requested only $2,000 for that damage because she did not think $7,000 was a "fair" amount.

{¶ 19} Christina testified that the items listed were those she could remember having in the house. She testified that she had estimated the values of the items herself, and that she "estimated pretty low." She stated that the damages to the truck and the van were caused when "things went out of the house and blew so it hit the vehicles and whatever was out there." On cross-examination, Christina implied that she had been unable to get into the home to recover personal items. She testified that the box containing her engagement ring had been in the master bedroom, but she did not know whether it was still in the home because she could not get into the structure. She testified that the estimate for damages to the van

and truck were her estimates and admitted she had not obtained professional estimates for the repairs.

{¶ 20} R.C. 2929.18(A)(1) allows the trial court to award judgment based on the victim's economic loss. The court may consider "the amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information." R.C. 2929.18(A)(1). "However, the amount of the restitution must be supported by competent, credible evidence in the record from which the court can discern the amount of the restitution to a reasonable degree of certainty." *State v. Policaro*, 10th Dist. No. 06AP–913, 2007-Ohio-1469, 2007 WL 927204, at ¶ 7, citing *State v. Sommer*, 154 Ohio App.3d 421, 2003-Ohio-5022, 797 N.E.2d 559; *State v. Gears* (1999), 135 Ohio App.3d 297, 300, 733 N.E.2d 683.

{¶ 21} The court ordered restitution in the amount of $3,088.23 to be paid to Richard for medical expenses not covered by Blue Cross/Blue Shield or DJFS. At the hearing, the court had before it State's Exhibit 1, including billing records from Blue Cross/Blue Shield, which paid some of Richard's and Richelle's medical bills, and from DJFS for Medicaid, which had paid some of Christina's medical bills. From this evidence, the court could determine which medical bills had been paid by the insurers and which bills had been paid by the victims. Thus, there was clear and competent evidence on the record, and the trial court did not abuse its discretion.

{¶ 22} The court also ordered restitution to Christina in the full amount requested for personal property, $20,732. Attached to State's Exhibit 1 as a packet entitled "Restitution" was a list of "lost" items, categorized by room, and the items' values. The first four pages were prepared by Sauber based on the information provided to her by Christina. Attached to those sheets were copies of handwritten lists. The lists were prepared by Christina and organized by room, indicating property lost and values for the property.

{¶ 23} We do not doubt that the victims suffered property losses as a result of the collision; however, the state failed to produce clear and competent evidence establishing those losses and values. Sauber testified that she instructed Christina "to make a list of items that was [sic] there that cannot be used, cannot be fixed, is [sic] dirty, is [sic] filthy, or yucky or whatever." We are not aware of any such legal standard in evaluating economic loss. Furthermore, Christina's testimony reveals that the list was the "best [she] could remember as to what was in there as to that." The evidence shows that the victims had not yet attempted to recover any of their personal property from the home. This is particularly evident in Christina's testimony concerning the engagement ring. On cross-examination, Christina engaged in the following discussion with defense counsel:

Q: Okay. The item that this ring was kept in was that item found or located in the house?

A: Well, the house is still a mess yet.

Q: Yes, ma'am. That's—

A: I cannot find—

Q: Okay. I—

A: it—it's—but there's a lot of things still there that are there that we can't get yet until they knock down the house.

Q: Yes, ma'am. I—I agree with you. And, in fact, that's kind of my point.

A: Right.

Q: Having Mr. Didion pay for an item that might still be laying at the bottom of the debris in that closed box wouldn't be fair, would it?

A: No.

This testimony, coupled with Christina's earlier statements that she had listed the victims' property to the best of her recollection, reflects that some items of personal property might be recovered from the residence and also reflects that Christina had little, if any, knowledge as to what items could not be used, could not be fixed, were dirty, were filthy, or were "yucky."

{¶ 24} Sauber's testimony made clear that there had been no verification or inspection of the property to determine appropriate values for personal property, and she had not worked with an appraiser. Sauber also testified that she had reduced Christina's estimate of damage to the 1997 Ford truck from $7,000 to $2,000 because she did not think Christina's estimate was "fair." However, there was no evidence to indicate that Sauber was qualified to value the cost of auto repairs or personal property she had never seen. Also, as to the Ford truck, Christina failed to state with any specificity what damage had been done to the truck. She stated that the truck had been parked next to the back porch of the house, and when Didion's truck crashed through the home, debris "flew out." There was no testimony establishing *what* damage had been caused to the truck because of the collision, and there was no evidence, other than Christina's unverified estimate and Sauber's unilaterally reduced estimate, to show the cost of repairing any damages.

{¶ 25} On this record, there is not credible and competent evidence to prove economic loss to personal property, and the trial court abused its discretion by ordering restitution in the amount of $20,730 for personal property. While our holding does not require victims to take extraordinary efforts to recover their personal property, this record does not indicate any effort to recover some of the personal property, and it even implies that some items might be recovered in the

future. See, generally, *State v. Vorhees*, 3d Dist. No. 1–05–63, 2006-Ohio-612, 2006 WL 319176 (disallowing restitution for recovered personal property).

{¶ 26} As to the court's orders concerning restitution to Blue Cross/Blue Shield, DJFS, and First National Bank of Sycamore, the trial court did not have statutory authority to award restitution to third parties. For the reasons below, the court abused its discretion in so doing.

{¶ 27} The version of R.C. 2929.18 in effect until June 1, 2004, specifically provided for restitution to the victim or to third parties. See *State v. Kreischer*, 109 Ohio St.3d 391, 2006-Ohio-2706, 848 N.E.2d 496. However, in 125 Am.Sub. H.B. No. 52, the General Assembly deleted the provision allowing trial courts to award restitution to third parties.[2] In the General Assembly's final analysis of 125 Sub.H.B. No. 52, it noted that the bill *"repeals* all of the language that pertains to the restitution order requiring that reimbursement be made to third parties, including governmental agencies or persons other than governmental agencies, for amounts paid to or on behalf of the victim or any survivor of the victim for economic loss." (Emphasis added). In *Kreischer*, the Ohio Supreme Court was clear that its holding applied only to those versions of R.C. 2929.18(A)(1) effective *prior* to June 1, 2004. There are many cases from this district affirming trial courts' restitution orders to third parties under the prior version of R.C. 2929.18(A)(1). See *State v. Christy*, 3d Dist. No. 16–06–01, 2006-Ohio-4319, 2006 WL 2390273; *State v. Rose*, 3d Dist. No. 9–05–43, 2006-Ohio-3071, 2006 WL 1669135; *State v. Eggeman*, 3d Dist. No. 15–04–07, 2004-Ohio-6495, 2004 WL 2785951.

{¶ 28} One could argue that the statute, as amended in 125 Am.Sub.H.B. No. 52, provides trial courts broad discretion in ordering financial sanctions and that the courts' discretion includes ordering restitution to third parties. However, in reading R.C. 2929.18(A)(1), (2), and (3) together, we find it clear that such an interpretation was not the intent of the General Assembly. The statute authorizes the courts to order restitution, fines, court costs, and/or other types of financial sanctions. Other forms of financial sanctions would not include variations of the restitution, fines, or court costs provided for in the statute. R.C. 2929.18(A)(1), (2), and (3) clearly apply if the court decides to order the financial sanctions allowed in those sections. So if the trial court wishes to impose

2. The relevant deleted language stated: "The order may include a requirement that reimbursement be made to third parties for amounts paid to or on behalf of the victim or any survivor of the victim for economic loss resulting from the offense. If reimbursement to third parties is required, the reimbursement shall be made to any governmental agency to repay any amounts paid by the agency to or on behalf of the victim or any survivor of the victim for economic loss resulting from the offense before any reimbursement is made to any person other than a governmental agency." R.C. 2929.18(A)(1) (effective Jan. 1, 2004).

restitution as part of a defendant's sentence, it is constrained by the provisions found in R.C. 2929.18(A)(1). Likewise, if the court wishes to impose a fine, it is bound by R.C. 2929.18(A)(2), and if it wishes to impose court costs, it is bound by R.C. 2929.18(A)(3). A court's discretion is not so broad as to allow it to exceed the provisions of R.C. 2929.18(A)(1), (2), or (3) when ordering restitution, fines, or court costs.

{¶ 29} The General Assembly removed the third-party language from the statute for a reason in 2004, and it has never put the language back. The judiciary has the duty to interpret the words provided by the General Assembly, not to rewrite the statute by deleting or inserting words. *Erb v. Erb* (2001), 91 Ohio St.3d 503, 507, 747 N.E.2d 230, citing *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus. The General Assembly's amendment of a statute is "presumed to have been made to effect some purpose." *Canton Malleable Iron Co. v. Porterfield* (1972), 30 Ohio St.2d 163, 175, 59 O.O.2d 178, 283 N.E.2d 434, citing *State ex rel. Carmean v. Bd. of Edn.* (1960), 170 Ohio St. 415, 11 O.O.2d 162, 165 N.E.2d 918; *Columbus–Suburban Coach Lines v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125, 49 O.O.2d 445, 254 N.E.2d 8; *Fyr–Fyter Co. v. Glander* (1948), 150 Ohio St. 118, 37 O.O. 432, 80 N.E.2d 776; *Leader v. Glander* (1948), 149 Ohio St. 1, 36 O.O. 326, 77 N.E.2d 69. R.C. 2929.18(A)(1) used to allow restitution to third parties, but it no longer does. Therefore, we hold that R.C. 2929.18(A)(1) authorizes trial courts to order the payment of restitution to crime victims but not to third parties.

{¶ 30} We were concerned that our holding may be in conflict with the Tenth District Court of Appeals' decision in *Policaro,* in which the court affirmed restitution in favor of a third-party insurance company. In that case, the court stated that the current version of R.C. 2929.18(A)(1) authorizes the trial court to order restitution to the victim or third parties. *Policaro,* 10th Dist. No. 06AP–913, 2007-Ohio-1469, 2007 WL 927204, at ¶ 7. Although Policaro was indicted on October 19, 2005, for a theft offense, the court did not include the date of the offense in its opinion. Likewise, it did not clearly state which version of R.C. 2929.18(A)(1) was applicable. However, because the court stated that the trial court could order restitution to a victim or a third party, the court apparently applied the version in effect prior to June 1, 2004, an analysis that would apply if the offense was committed during the time that version of the statute was in effect. Therefore, this opinion is not in conflict with *Policaro.*

{¶ 31} For the reasons stated above, the trial court's order of restitution to Richard Dible in the amount of $3,088.23 is affirmed; the court's orders of restitution to Blue Cross/Blue Shield, DJFS, and First National Bank of Sycamore, in care of the Richelle Dible Fund, are reversed; and the court's order of restitution to Christina Wollett for personal property is reversed and remanded

for additional proceedings to determine the victims' damages for personal property. See, generally, *State v. Bruno*, 8th Dist. No. 85009, 2005-Ohio-3830, 2005 WL 1791570; *State v. Tuemler*, 12th Dist. No. CA 2004–06–068, 2005-Ohio-1240, 2005 WL 637814; *State v. Jiles*, 9th Dist. No. 21230, 2003-Ohio-963, 2003 WL 728963. The first and third assignments of error are sustained.

{¶ 32} In the second assignment of error, Didion contends that the trial court erred in ordering restitution in the amount of $162,809.50 because the trial court did not consider his ability to pay restitution. R.C. 2929.19(B)(6) requires the court to consider the defendant's current and future ability to pay before ordering restitution. Didion relies on this court's decision in *State v. Clifford*, 3d Dist. No. 11–04–06, 2005-Ohio-958, 2005 WL 517514, reversed on other grounds in *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109, 847 N.E.2d 1174, in which we reversed the trial court's decision for its failure to consider the defendant's ability to pay.

{¶ 33} In *Clifford*, we noted that R.C. 2929.19(B)(6) does not impose a duty on the trial court to consider any specific factors, nor does it require the trial court to make any specific findings concerning the defendant's ability to pay. *Clifford*, at ¶ 14. "All that is required under R.C. 2929.19(B)(6) is that the trial court consider the offender's ability to pay." Id. See, also, *State v. Heuser*, 3d Dist. No. 5–04–10, 2004-Ohio-5345, 2004 WL 2258189, at ¶ 21. In *Clifford*, the trial court did not hold a restitution hearing, and the only evidence before it was a computerized criminal-history report, which was not part of the record and which the trial court did not indicate it had considered. In this case, the court had a presentence investigation report, which included information on Didion's age, education, and work history. Also, in mitigation of sentence, the court heard testimony from Didion's employer, who indicated that Didion was a dedicated employee with potential to advance within the company.[3] When the trial court imposed sentence, it stated that it had considered the presentence investigation, although the court did not mark the report as an exhibit. Therefore, the holding in *Clifford* is distinguishable based on the facts. See *Clifford* at ¶ 15, citing *State v. Martin* (2000), 140 Ohio App.3d 326, 338–339, 747 N.E.2d 318 (when considered by the trial court, "information contained in a presentence investigation report relating to a defendant's age, health, education and employment history [is] sufficient to comply with R.C. 2929.19(B)(6)"). The second assignment of error is overruled.

---

3. We note that the employer also mentioned an immediate need for somebody to fill a position and his intention for Didion to fill that opening. The employer's testimony implied that Didion may not have as much potential if he has to serve a prison term due to the interruption in his training and the employer's changing needs.

{¶ 34} In the fifth assignment of error, Didion challenges the imposition of consecutive sentences. Specifically, Didion contends that the trial court should have applied Ohio's sentencing law as it existed prior to *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. Didion argues that the trial court abused its discretion because R.C. 2929.41 requires courts to impose concurrent sentences except under certain circumstances. Because each of the offenses contained the same animus, Didion argues that the trial court could not sentence him to consecutive prison terms. The state counters Didion's arguments by relying on *Foster*. The state contends that we must review the trial court's sentence for an abuse of discretion. The state also argues that the trial court can impose consecutive sentences without making findings or giving reasons.

{¶ 35} The crux of Didion's argument is his reliance on statutes that are unconstitutional and have been severed. Didion relies on R.C. 2929.14(E)(4) and 2929.41(A) to support his arguments that the trial court should not have imposed consecutive sentences. However, both of those statutes were declared unconstitutional and severed. *Foster*, at paragraphs three and four of the syllabus.

{¶ 36} The Supreme Court was clear that the holding in *Foster* applied to all cases that were pending in the trial courts and to all cases that were pending on direct appeal, and Didion's case was pending in the trial court when *Foster* was decided. *Foster* at ¶ 104. Furthermore, Didion is incorrect as to the standard of review on appeal. *Foster* clearly provides that R.C. 2953.08(G) no longer applies to the severed portions of the statute, and therefore, trial courts have full discretion to sentence defendants within the statutory ranges. Id. at paragraph seven of the syllabus and ¶ 99–100.

{¶ 37} Reviewing the transcript of the sentencing hearing and the judgment entry filed herein, we cannot hold that the trial court abused its discretion in ordering consecutive sentences on counts four and five. The court stated that it had considered the principles and purposes of felony sentencing and that it had balanced the recidivism and seriousness factors. The court stated that it did not consider issues pertaining to impairment because the jury had acquitted Didion on those charges. The court stated that the shortest sentence would demean the seriousness of the offense and would not adequately protect the public. The court also emphasized that the victims were inside their *home* at the time of the collision, and not in another vehicle on the road. Although the court is no longer required to state its reasons for imposing consecutive sentences, it did so in this case, and we cannot find an abuse of discretion on this record. The fifth assignment of error is overruled.

{¶ 38} For the reasons set forth above, the judgment of the Seneca County Common Pleas Court is affirmed in part and reversed in part. This cause is

remanded to the trial court for further proceedings to ascertain the value of the damages sustained to the victims' personal property.

Judgment affirmed in part
and reversed in part,
and cause remanded.

SHAW and PRESTON, JJ., concur.