DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Jack Southall, Jr., appeals his conviction and sentence out of the Wayne County Court of Common Pleas. This Court affirms, in part, and reverses, in part.
 I. {¶ 2} Southall was indicted on one count of felonious assault in violation of R.C. 2903.11, a felony of the second degree. He pled not guilty to the charge. At the conclusion of trial, the jury found Southall guilty. The trial court sentenced him to serve seven years in prison and to pay restitution in the amount of $18,833.66. Southall timely appeals, raising four assignments of error for review. *Page 2 
 II. ASSIGNMENT OF ERROR I
"THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 3} Southall argues that his conviction for felonious assault was against the manifest weight of the evidence. This Court disagrees.
 "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, paragraph one of the syllabus.
This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. Id.
 {¶ 4} Southall was convicted of felonious assault in violation of R.C.2903.11(A)(2), which states that "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 5} R.C. 2901.22(B) states:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." *Page 3 
 {¶ 6} R.C. 2901.01(A)(3) defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." A deadly weapon is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C.2923.11(A).
 {¶ 7} At trial, Elizabeth Ondo testified that Southall is the father of her two young children, but that their relationship is estranged. She testified that she lives in Wooster, Wayne County, Ohio. She testified that on December 24, 2006, at 10:00 p.m., she went out on the stoop of her second floor apartment for a cigarette, when she heard a car pull into her driveway. She testified that she recognized the car as the one that Southall drove. She testified that she ran back into her house and told her boyfriend, Jason Messersmith, that Southall was there. She testified that she was afraid because of prior incidents with Southall.
 {¶ 8} Ms. Ondo testified that she heard Southall's voice as the car drove underneath her kitchen window, as well as the voice of an unknown man. She testified that Messersmith put on a shirt, wrapped a flannel jacket around himself, and went downstairs to tell Southall to leave. She testified that she watched Messersmith leave the house and that he did not take anything with him.
 {¶ 9} Ms. Ondo testified that she heard Messersmith "rap" on Southall's car window and tell him to leave. She testified that she then went to check on her two young children. She testified that she then picked up a phone to call the *Page 4 
police when she heard Jason make a "moaning hurt sound." She testified that she opened the door to see Jason coming up the steps. She testified that she saw blood all over Jason's shirt and blood dripping from him. She testified that Jason told her that "Jack F-ing stabbed me." She testified that she called 911 and was told to apply pressure to the wound. Ms. Ondo testified that Messersmith had a "big gaping wound" measuring 1 ½ to 2 inches.
 {¶ 10} Ms. Ondo identified the pink, blood-covered towel she used on Messersmith's wound, Messersmith's bloody shirt and photographs of blood on her sidewalk.
 {¶ 11} Ms. Ondo testified that the police had issued Southall a "letter of trespass" on December 14, 2006, directing him not to go to her place of employment. She testified that earlier in December, Southall dropped off some winter clothing for the children at her work. She testified that she did not have any conversation with Southall on December 22, 2006, regarding his dropping off Christmas presents, cards and a car for her at her home before Christmas. She testified that she did not notice any Christmas cards on her property when she left her home the day after Messersmith was stabbed.
 {¶ 12} Jason Messersmith testified that he was with Elizabeth Ondo at her home at 10:00 p.m. on December 24, 2006, when Ms. Ondo told him that Southall was downstairs in a car. He testified that Ms. Ondo appeared scared. He testified that it was "very unsettling" that Southall had appeared at the home late in the *Page 5 
evening on Christmas eve because Southall was not supposed to be at Ondo's home. Mr. Messersmith testified that he put on a shirt and wrapped a flannel jacket around himself and went downstairs to tell Southall to leave. He testified that he did not take anything with him when he left the home.
 {¶ 13} Mr. Messersmith testified that he approached Southall's car, knocked on the window and told him to "get out," that he was "not welcome here." He testified that he spoke loudly over the noise of the car engine. He testified that Southall was "fidgety" in the car, then he quickly "jammed the door open" and exited the car. Mr. Messersmith testified that Southall got "right in [his] face." He testified that he was concerned that Southall would become violent based on Southall's previous actions with Ms. Ondo.
 {¶ 14} Mr. Messersmith testified that he pushed Southall because he believed Southall was trying to go towards Ondo's home. He testified that he and Southall pushed one another and that he pulled out some of Southall's hair. He testified that the two of them continued to struggle until he was able to pull Southall to the ground and put his foot on Southall's chest. He testified that he began to remove his foot from Southall's chest because he realized that the two of them were behaving in a "crazy" or "silly" manner. Mr. Messersmith testified that Southall "raised up off the ground" and "stuck" him repeatedly with a knife, "digging" it into his armpit. He testified that he saw a "big silver sharp object" in Southall's hand. He testified that he looked down and saw blood coming out of *Page 6 
himself. He testified that he ran upstairs into Ondo's home and told her that Southall had stabbed him.
 {¶ 15} Mr. Messersmith testified that Ms. Ondo called 911 and that he was transported by life flight to a hospital. He testified that emergency medical personnel placed a big silver plate through his chest to raise his lung and prevent its collapse. He testified that he spent several days in the hospital and months on pain medication.
 {¶ 16} Mr. Messersmith testified on rebuttal that he did not see anyone else in Southall's car that evening, although he did not look for anyone else.
 {¶ 17} Deputy Tom Holmes of the Wayne County Sheriffs Office testified that he was dispatched to the scene of a stabbing at Ms. Ondo's home. He testified that he entered the home and saw blood everywhere. He testified that he saw Mr. Messersmith sitting in a chair with a towel over his chest. He testified that Messersmith removed the towel so he could see the wound and that "it was squirting blood out the side." Deputy Holmes testified that he accompanied Mr. Messersmith to the hospital where he took a photograph of his injuries and collected the bloody towel and Messersmith's clothing.
 {¶ 18} Deputy Mike Burkey of the Wayne County Sheriff's Office testified that he heard a dispatch on December 24, 2006, regarding a stabbing in the area. He testified that he saw a car matching the description of Southall's and he turned around to intercept it. He testified that he called for backup and pursued *Page 7 
Southall's vehicle which was traveling in excess of the speed limit. He testified that Southall finally pulled over and stopped after Deputy Burkey had pursued him for one-half to three quarters of a mile with his overhead lights engaged.
 {¶ 19} Deputy Burkey testified that Southall began to approach him but he told him to stay in his car. He testified that Southall identified himself. After the backup officer arrived, they placed Southall in handcuffs. Deputy Burkey testified that he smelled a strong odor of alcohol on Southall, and that Southall was unsteady on his feet and his speech was slurred. He testified that Southall was belligerent and yelling vulgarities. He testified that Southall refused a field sobriety test, so they transported him to the jail.
 {¶ 20} Deputy Burkey testified that Southall claimed that someone had pulled his hair. He testified that he was taken to a hospital for a blood draw and to address any injuries. He testified that the examining doctor did not see any injuries.
 {¶ 21} Deputy Burkey testified that no knife was found in Southall's car or on his person. He testified that there was blood splattered on Southall's shirt and his clothes were dirty.
 {¶ 22} Deputy Louis Johns of the Wayne County Sheriffs office testified that he was called to assist at the scene of the stabbing. He testified that he collected evidence and took photographs of blood and hair at the scene. He *Page 8 
testified that there was no evidence to indicate that anyone had been dragged across the yard. Deputy Johns testified that there was no knife found at the scene.
 {¶ 23} Deputy Tom Ballinger of the Wayne County Sheriff's Office testified that he was dispatched on the evening of December 24, 2006, to assist in a traffic stop involving Southall. He testified that Southall was intoxicated and claimed to need medical attention. He testified that he also assisted Deputy Burkey with Southall at the hospital. Deputy Ballinger testified that he inventoried Southall's car and that he did not find any Christmas presents or cards.
 {¶ 24} Deputy Ballinger testified that Southall gave him a narrative statement at the Justice Center regarding the incident. He testified that the statement was then transcribed verbatim. The transcribed statement was admitted as an exhibit. In the statement Southall asserted that he went to Ms. Ondo's home the late evening of December 24, 2006, but that he had no communication with anyone there until someone grabbed him by the hair and pulled him through his car window. Southall stated that he was assaulted and that he had a witness in his car at the time, although he did not know the witness' name. Southall stated that he tried to protect himself but that he did not stab the victim or have a knife in his possession.
 {¶ 25} Deputy Ballinger testified that Southall was cooperative at times, when he was receiving something he wanted, but uncooperative when he was receiving no benefit. *Page 9 
 {¶ 26} Gayle Denison testified that she lives on the lower level of the house where Elizabeth Ondo resides in the upstairs apartment. She testified that she recognized Southall's car in the driveway the late evening of December 24, 2006. She testified that Southall's car was parked approximately 130 feet from the house.
 {¶ 27} Deputy Alan Sands of the Wayne County Sheriffs Department, Correctional Division, testified that he was checking on Southall in his jail cell when Southall said he wanted to make a statement to him. Deputy Sands testified that he wrote questions and Southall wrote his own answers. Southall's written statement was admitted into evidence.
 {¶ 28} Southall stated that he went to Elizabeth Ondo's home on the evening of December 24, 2006, to leave Christmas cards for his children and the car for Ms. Ondo. He stated that he was talking with his acquaintance "Nate" in the car when someone grabbed his hair and started pulling him out of the car. He stated that Nate got out of the car and presumably ran away. Southall stated that he defended himself from his attacker by blocking his face with his hand.
 {¶ 29} Southall testified in his own defense. He testified that he went to Ms. Ondo's home on Christmas eve, 2006, to drop off cards and a car, as he and Ms. Ondo had arranged in a December 22, 2006 conversation. He testified that he had arranged for a friend, John Antall, to pick him up after dropping off the car. He testified that an acquaintance, Nathan Taylor, drove the car to Ms. Ondo's *Page 10 
because Southall had lost his driver's license due to a DUI. He testified that Taylor left the vehicle to use the bathroom and Southall got into the driver's seat to sign the Christmas cards. Southall testified that someone began pulling his hair, pulled him through the window and out of the car, and dragged him and threw him to the ground. He identified his attacker as John Messersmith Frank, but testified that he knew him as Jason.
 {¶ 30} Southall testified that Taylor then came around the side of car at the same time that Jason Messersmith let Southall go. Although he admitted that he had a utility knife in a toolbox in the car, Southall denied pulling a knife on anyone. Southall testified that after Jason left, he drove off alone. He admitted that he had drunk a half of a bottle of wine prior to the incident and that he drank another two glasses while driving away from the scene.
 {¶ 31} Southall testified that he stopped his car for the deputies and told them that he had been hit near his ear below his eye and in the throat. He testified that the struggle took place close to a neighbor's house, rather than near Ms. Ondo's home. He testified that he sustained injuries as a result of the struggle, and that he was bleeding from his knee and cheek.
 {¶ 32} Although there was some conflicting evidence in this case, this Court will not disturb the jury's factual determinations because the jury is in the best position to determine the credibility of the witnesses during trial. State v. Crowe, 9th Dist. No. 04CA0098-M,2005-Ohio-4082, at ¶ 22. In addition, this *Page 11 
Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the jury chose to believe certain witnesses' testimony over the testimony of others. Id.
 {¶ 33} Based on a thorough review of the record, this Court finds that this is not the exceptional case, where the evidence weighs heavily in favor of Southall. A thorough review of the record compels this Court to find no indication that the jury lost its way and committed a manifest miscarriage of justice in convicting Southall of felonious assault. The weight of the evidence supports the conclusion that Southall knowingly used a sharp bladed object to stab Mr. Messersmith and cause him physical harm. Accordingly, Southall's conviction for felonious assault is not against the weight of the evidence. Southall's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "TRIAL COUNSEL WAS INEFFECTIVE, IN VIOLATION OF U.S. CONST. AMEND. VI AND XIV, AND OHIO CONST. ART. I, SEC. 10."
 {¶ 34} Southall argues that his trial counsel was ineffective for failing to raise the defense of self-defense and for failing to request that the trial court instruct the jury on the lesser included offense of aggravated assault. This Court disagrees.
 {¶ 35} To establish the existence of ineffective assistance of counsel, Southall must satisfy a two-pronged test: *Page 12 
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Hoehn, 9th Dist. No. 03CA0076-M, 2004-Ohio-1419, at ¶ 43, quoting Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674.
 {¶ 36} Southall bears the burden of proving that counsel's assistance was ineffective. Hoehn at ¶ 44, citing State v. Smith (1985),17 Ohio St.3d 98, 100. In this regard, there is a "strong presumption that licensed attorneys are competent and that the challenged action is the product of a sound strategy." State v. Watson (July 30, 1997), 9th Dist. No. 18215. In addition, "debatable trial tactics do not give rise to a claim for ineffective assistance of counsel." Hoehn at ¶ 45, citingState v. Clayton (1980), 62 Ohio St.2d 45, 49. Even if this Court questions trial counsel's strategic decisions, we must defer to his judgment. Id. The Ohio Supreme Court has stated:
 "`We deem it misleading to decide an issue of competency by using, as a measuring rod, only those criteria defined as the best of available practices in the defense field.' *** Counsel chose a strategy that proved ineffective, but the fact that there was another and better strategy available does not amount to a breach of an essential duty to his client." Id. quoting State v. Lytle (1976), 48 Ohio St.2d 391, 396.
Upon review of the record, this Court finds that Southall has failed to meet the first prong of the test set out in Strickland, 466 U.S. at 687. *Page 13 
 {¶ 37} In this case, trial counsel informed the trial court that he had discussed with Southall whether to request instructions regarding self-defense and the lesser included offense of aggravated assault.[1]
Trial counsel informed the trial court that Southall did not want either instruction. Southall testified in his own defense and denied causing any harm to Mr. Messersmith. In fact, Southall testified that he was the victim of an assault. Where Southall did not admit that he had caused Mr. Messersmith any harm, either when defending himself or in response to serious provocation occasioned by Messersmith's conduct, trial counsel's performance was not deficient when he requested that no self-defense or aggravated assault instruction be given to the jury. Accordingly, Southall's arguments do not rise to the level of ineffective assistance of counsel. Southall's second assignment of error is overruled. *Page 14 
 ASSIGNMENT OF ERROR III "THE SENTENCE WAS CONTRARY TO LAW BECAUSE THE TRIAL COURT DID NOT PERSONALLY INFORM MR. SOUTHALL OF POSSIBLE PAROLE BOAR D EXTENSIONS OF HIS PRISON TERM, AS REQUIRED BY R.C. 2929.19(B)(3)."
 {¶ 38} Southall argues that his sentence is contrary to law because the trial court did not personally inform him pursuant to R.C.2929.19(B)(3) that the parole board may extend his prison term under certain circumstances. This Court agrees
 {¶ 39} R.C. 2929.19(B)(3)(b) states that, upon determining at the sentencing hearing that a prison term is necessary or required, the trial court shall "[n]otify the offender that, as part of the sentence, the parole board may extend the stated prison term for certain violations of prison rules for up to one-half of the stated prison term[.]" The State concedes that the trial court failed to so notify Southall on the record. This Court's review of the sentencing hearing transcript confirms that the trial court failed to notify Southall in this regard as required by statute. The court erred in imposing a sentence contrary to law. Accordingly, the matter is remanded to the trial court for resentencing in compliance with law. Southall's third assignment of error is sustained.
 ASSIGNMENT OF ERROR IV "THE ORDER OF RESTITUTION IN THE AMOUNT OF $18,883.66 WAS CONTRARY TO LAW."
 {¶ 40} Southall argues that the trial court's restitution order was contrary to law because it failed to name the person or entity to whom it must be paid and *Page 15 
because the legislature has excluded third parties as payees for purposes of restitution. This Court agrees.
 {¶ 41} R.C. 2929.18 addresses financial sanctions which the trial court may impose in conjunction with criminal sentencing. This Court must apply the law which was in effect at the time the offense occurred.State v. Didion, 3d Dist. No. 13-06-25, 2007-Ohio-4494, at ¶ 15, citingState v. Christy, 3d Dist. No. 16-06-01, 2006-Ohio-4319, at ¶ 7, fn.1.
 {¶ 42} Prior to June 1, 2004, R.C. 2929.18 specifically provided that the trial court could order that restitution be paid to the victim or to third parties. See State v. Kreischer, 109 Ohio St.3d 391,2006-Ohio-2706. The General Assembly, however, deleted reference to third parties in Sub. H.B.52, and on June 1, 2004, the statute was amended to read, in relevant part:
 "[T]he court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction * * *. Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:
 "(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution *Page 16 
shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense."[2]
R.C. 2929.18(A)(1).
Economic loss is defined, in relevant part, as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense and includes any * * * medical cost * * * incurred as a result of the commission of the offense." R.C. 2929.01(M).
 {¶ 43} The Third District Court of Appeals addressed the application of the post-June 1, 2004 version of the statute. It stated that "if the trial court wishes to impose restitution as part of a defendant's sentence, it is constrained by the provisions found in R.C. 2929.18(A)(1)." Didion at ¶ 28. The Didion court continued:
 "The General Assembly removed the third-party language from the statute for a reason in 2004, and it has never put the language back. The judiciary has the duty to interpret the words provided by the General Assembly, not to rewrite the statute by deleting or inserting words. The General Assembly's amendment of a statute is presumed to have been made to effect some purpose. R.C. 2929.18(A)(1) used to allow restitution to third parties, but it no longer does. Therefore, we hold that R.C. 2929.18(A)(1) authorizes trial courts to order the payment of restitution to crime victims but not to third parties." (Internal citations and quotations omitted.) Id. at ¶ 29.
 {¶ 44} This Court agrees with the reasoning of the Didion court. In this case, the trial court stated on the record at the sentencing hearing and in its *Page 17 
judgment entry that Southall shall pay restitution in the amount of $18,833.66, without identifying to whom the restitution was to be paid. The trial court arrived at that amount, however, based on information provided by the Adult Probation Department, which apportioned the amount of restitution as follows: $330.00 and $1,474.00 owed to Summa Emergency Associates; $76.00 owed to Radiology Services of Canton; $1,074.91 owed to T.C. Companies; and $15,878.75 owed to Summa Health System. The only evidence of any economic loss indicates costs incurred by a third party, not the victim. As the relevant version of R.C. 2929.18(A)(1) does not allow the sentencing court to order restitution to a third party, the trial court restitution order was contrary to law. Accordingly, the matter is remanded to the trial court for resentencing in compliance with law. Southall's fourth assignment of error is sustained.
 III. {¶ 45} Southall's first and second assignments of error are overruled. Southall's third and fourth assignments of error are sustained. Accordingly, the jury's finding of guilt on the charge of felonious assault is affirmed, but the matter is reversed and remanded for resentencing, consistent with this Court's decision.
 Judgment affirmed, in part, reversed, in part, and cause remanded. *Page 18 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
WHITMORE, J. DICKINSON, J. CONCUR
[1] R.C. 2903.12(A)(2) provides that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance[.]"
[2] Although the legislature has twice more amended the statute, this provision mirrors the current version in effect as of July 1, 2007. *Page 1