OPINION
{¶ 1} The appellant, Raymond Eggeman, appeals the November 7, 2003 judgment and sentence of the Common Pleas Court of Van Wert County, Ohio, following a jury verdict convicting him of aggravated arson and insurance fraud.
 {¶ 2} At approximately 9:45 p.m. on September 30, 2002, the Delphos Fire Department received a call regarding a fire at a vacant apartment duplex owned by Eggeman. The lower unit, where the fire occurred, was recently renovated due to uninhabitable conditions left by a previous tenant.
 {¶ 3} Thirty-one firefighters and three pieces of fire equipment were used to battle the blaze. The first firefighters that arrived at the scene turned off the natural gas line that flowed to the house. Allegedly, between eight and twelve firefighters actually entered the house to battle the blaze; nevertheless, the apartment still sustained serious damage. It was determined that an accelerant was splashed or poured on the floor, which was deliberately ignited to start the fire. Moreover, investigators also concluded that the natural gas line in the first floor utility room was intentionally broken.
 {¶ 4} At the outset, it should be noted that Eggeman made pretrial statements concerning his whereabouts and alibis; however, those statements sometimes conflicted with his own testimony at trial. Before the trial, Eggeman claimed that on the day of the fire he was working with his brother-in-law, John Pruden, at Pruden's house about 10-12 miles south of Van Wert, Ohio. According to Eggeman, he quit working between 7:30 and 8 p.m. and drove directly to his St. Mary's home in his Toyota automobile, which is about a 30 minute drive away.
 {¶ 5} After arriving home, Eggeman stated that he fixed dinner, watched television, and showered. Eggeman claimed he remained home all night and, as usual, he showered around 10:30 p.m. in order to be available to answer any incoming phone calls. On the night of the fire, however, Eggeman missed two phone calls — one at 9:51 p.m. and another at 9:53 p.m. — informing him that his apartment was on fire. Eggeman returned the first phone call at 10:18 p.m. In an October 17, 2002 meeting with Delphos Police and the Ohio State Fire Marshall, Eggeman claimed that he had no alibi the night of the fire because his wife was not home. Moreover, on October 31, 2002, he further stated that no one could testify that he was home the night of the fire.
 {¶ 6} The night of the fire, two witnesses indicated that they saw a grey and black Blazer SUV parked outside the apartments between 8:30 p.m. and 9:15 p.m. The first witness, one of Eggeman's tenants, recalled that she saw the vehicle parked next to the building that caught on fire at approximately 8:30 p.m. Moreover, the second witness, an off-duty police officer visiting his mother on the night of the fire, also saw a grey and black Blazer SUV parked next to the same apartment some time between 9 and 9:15 p.m. It was later determined that Eggeman owned a grey and black Blazer SUV.
 {¶ 7} Based on the foregoing evidence, Eggeman was indicted on one count of aggravated arson in violation of R.C.2909.02(A)(1), a felony of the first degree and one count of insurance fraud in violation of R.C. 2913.47(B)(1), a felony in the fourth degree.
 {¶ 8} At trial, the State presented evidence showing that Eggeman collected nearly $50,000 in insurance proceeds as a result of the fire, as well as evidence that circumstantially placed Eggeman at the scene of fire. The defendant moved for a directed verdict, which was denied. During the defendant's case, Eggeman testified that he did not set the fire and told the jury that he had an alibi. Eggeman testified that on the night of the fire, Pruden was at his house around 9 p.m. to borrow a drill, which Pruden confirmed when he took the stand. Finally, Eggeman stated that he had no motive to set the fire because he just remodeled the entire apartment, it was free of encumbrances, and it was ready to be rented.
 {¶ 9} After weighing the evidence, the jury found Eggeman guilty on both counts. Eggeman moved for a new trial pursuant to Criminal Rule 33, but the motion was denied. As a result, the trial court sentenced Eggeman to three years in prison. Furthermore, Eggeman was ordered to pay $49,547.99 in restitution to State Farm Insurance Company and $5,568.64 in reimbursement for the arson investigation and prosecution. Eggeman appeals alleging six assignments of error.
 First and Second Assignments of Error The trial court erred in failing to grant the Appellant'sMotion for a directed verdict Pursuant to Crim. R. 29. Theevidence is insufficient to establish an essential element of thecrime of aggravated Arson: "Creating a substantial risk ofserious physical Harm to any person other than the Offender."
 The trial court erred in failing to grant the Appellant'sMotion for a New Trial, pursuant to Crim. R. 33. The evidence isinsufficient to establish an essential element of the crime ofaggravated Arson: "Creating a substantial risk of seriousphysical harm to any person other than the offender."
 {¶ 10} Criminal Rule 29 states that "a defendant . . . after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment . . . if the evidence is insufficient to sustain a conviction of such offense. . . ." Similarly, Criminal Rule 33(A)(4) announces that "[a] new trial may be granted on motion of the defendant for . . . [a] verdict [that] is not sustained by sufficient evidence or is contrary to law."
 {¶ 11} In State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492 at paragraph two of the syllabus, the Ohio Supreme Court set forth the sufficiency of the evidence standard as follows:
An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence admitted at trial to determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. The relevant inquiryis whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have foundthe essential elements of the crime proven beyond a reasonabledoubt.
 {¶ 12} Aggravated arson, as defined in R.C. 2902.02(A)(1), states that "[n]o person, by means of fire or explosion, shall knowingly . . . [c]reate a substantial risk of serious physical harm to any person other than the offender." A defendant "acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Moreover, "[s]ubstantial risk means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). Finally, "serious physical harm to persons" is defined as
(b) Any physical harm that carries a substantial risk ofdeath;
 (c) Any physical harm that involves some permanent incapacity,whether partial or total, or that involves some temporary,substantial incapacity;
 (d) Any physical harm that involves some permanentdisfigurement or that involves some temporary, seriousdisfigurement;
 (e) Any physical harm that involves acute pain of suchduration as to result in substantial suffering or that involvesany degree of prolonged or intractable pain.
R.C. 2901.01(A)(5).
 {¶ 13} In the instant case, the State presented evidence that the natural gas line in the utility room of the apartment was intentionally broken prior to or immediately after the start of the fire. Ralph Long, an arson and fire expert, and Donald Moreo, the Delphos Fire Department Platoon Chief, testified that exposing natural gas to a fire could result in an explosion. The record states:
Ralph Long: This attaches to the union that you see layingdown there. This piece of pipe goes like this, [sic] there is adefinite break in the threads where it went into this union.There is also indentation on this pipe indicating that there hadbeen an object strike this pipe causing the damage.
 Mr. Taylor: Where is that indentation at?
 Ralph Long: (Mr. Long displays the indentation)
 Mr. Taylor: What impact would a broken natural gas pipelinehave to a fire that is going on in a structure of this type?
 Ralph Long: Where it had the potential to add natural gas tothe interior of the dwelling which would increase the fuel loadwithin the dwelling and cause a greater fire.
 Mr. Taylor: Would that cause any possible threat to the peoplewho would be fighting fire?
 Ralph Long: Yes it would.
 Mr. Taylor: And what would be the outcome if that, the gasfrom this line would be ignited by the fire?
 Ralph Long: Depending on when the gas was ignited. If the gaswould have, you have to understand natural gas is lighter thanair so natural gas goes to the ceiling then if [sic] builds downfrom the ceiling. Once it reaches an ignition point whether it beopen flame, pilot light, whatever it may be[,] it will thenignite can and will [sic] cause an explosion which will blowpieces apart; or it will ignite as it is expelled and increasethe flame volume and temperature within the dwelling.
Trial Tr. at 199-200.
Donald Moreo: I know [the pipe] was cracked in this area.
 Mr. Taylor: You were called to take a look at that?
 Donald Moreo: Yes sir.
 Mr. Taylor: Why was that something that you would want to lookat?
 Donald Moreo: It poses a threat to us fire fighters. Ifnatural gas, any kind of gas is introduced to a fire building itbecomes an extreme explosion risk to us as fire fighters andserious injury.
 Mr. Taylor: What type of explosion could result from such agas leak?
 Donald Moreo: Pretty much total devastation.
Trial Tr. at 96.
 {¶ 14} In order to prove an aggravated arson case, the State must prove beyond a reasonable doubt that the defendant, by means of fire or explosion, knowingly created a substantial risk ofserious physical harm. R.C. 2909.02(A)(1). The "knowingly" element in an aggravated arson case refers to a defendant's state of mind when he set a fire — i.e. the defendant is aware that the fire or explosion he set will probably create a substantial risk of serious physical harm. The requisite proof is not dependant upon the actual result of the fire but is based upon the risk of harm created by the defendant's actions.
 {¶ 15} Viewing Long and Moreo's testimony in a light most favorable to the State, a rational trier of fact could conclude that an intentionally broken natural gas pipeline inside an apartment, coupled with a set fire, created a strong possibility of an explosion and consequently created a substantial risk of serious physical harm to anyone in the vicinity, including, in particular, the firefighters responding to this fire.
 {¶ 16} Based on this testimony and the facts of this case, the first and second assignments of error are overruled.
 Third Assignment of Error The trial court erred in failing to grant the appellant'smotion for a directed verdict pursuant to Crim. R. 29. Theappellant's conviction on insurance fraud is not supported bysufficient evidence.
 {¶ 17} In this assignment of error, Eggeman argues that the State failed to present the necessary evidence in order to sustain a conviction for insurance fraud. Specifically, Eggeman maintains that the State did not produce, in its case-in-chief, evidence that State Farm Fire Casualty Company (hereinafter "State Farm) is an "insurer" as defined in R.C. 2913.47(A)(3).
 {¶ 18} Eggeman was charged with insurance fraud, which states:
No person, with purpose to defraud or knowing that the personis facilitating a fraud, shall . . . [p]resent to, or cause to bepresented to, an insurer any written or oral statement that ispart of, or in support of . . . a claim for payment pursuant to apolicy, or a claim pursuant to any other benefit pursuant to apolicy, knowing that the statement, or any part of the statement,is false or deceptive.
R.C. 2913.47(B)(1). The term "insurer" is defined as "any person that is authorized to engage in the business of insurance in this state under Title XXXIX [39] of the Revised Code." R.C.2913.47(A)(3).
 {¶ 19} It is a well established principle of law that "[a] defendant who is tried before a jury and brings a Crim.R. 29(A) motion for acquittal at the close of the State's case waives any error in the denial of the motion if the defendant puts on a defense and fails to renew the motion for acquittal at the close of all evidence." State v. McElroy, 3rd Dist. No. 2-2000-29, 2001-Ohio-2113 citing State v. Miley (1996),114 Ohio App.3d 738,742 citingDayton v. Rogers (1979), 60 Ohio St.2d 162,163, overruled on other grounds by State v. Lazzaro (1996),76 Ohio St.3d 261; see also State v. Hughes (June 29, 1995), 3rd Dist. No. 1-94-81. If the Crim.R. 29 motion is properly renewed at the close of the evidence, however, then the appellate court may review "only the portion of the record toward which the original motion was directed" when determining whether there is sufficient evidence. Miley, 114 Ohio App.3d at 742 citingHemlick v. Republic-Franklin Ins. (1998), 39 Ohio St.3d 71,73.
 {¶ 20} After the conclusion of all evidence in the instant case, Eggeman's counsel stated "[i]f it would please the Court I would like to renew Rule 29 Motion for a directed verdict in the State's Case on the Aggravated Arson Case [sic]." Thus, Eggeman renewed his directed verdict motion only to the aggravated arson charge but failed to do so with regards to the insurance fraud charge. As a result, Eggeman's failure to renew his Crim.R. 29(A) motion for the insurance fraud charge at the conclusion of his defense precludes him from alleging error on appeal pertaining to the denial of the motion based on the sufficiency of the evidence introduced in the State's case-in-chief.
 {¶ 21} Thus, we stand on our initial conclusion that, after reviewing the trial record prior to Eggeman's defense, Miley,114 Ohio App.3d at 742, there is sufficient evidence to convict Eggeman for aggravated arson; however, we overrule Eggeman's third assignment of error because the denial of the Crim.R. 29 motion as to the insurance fraud charge was not properly preserved for appellate review.
 Fourth Assignment of Error The appellant's convictions are contrary to the manifestweight of the evidence.
 {¶ 22} In State v. Thompkins, the Ohio Supreme Court stated:
When a court of appeals reverses a judgment of a trial courton the basis that the verdict is against the weight of theevidence, the appellate court sits as a thirteenth juror anddisagrees with the factfinder's resolution of the conflictingtestimony. The Court reviewing the entire record, weighs theevidence and all reasonable inferences, considers the credibilityof the witnesses and determines whether in resolving conflicts inthe evidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541 (internal citations and quotations omitted).
 Insurance Fraud {¶ 23} After reviewing the entire record, the evidence shows that the jury did not clearly lose its way in finding that Eggeman committed insurance fraud. As a practical matter, the State proffered testimony that Eggeman did collect $49,547.99 in insurance proceeds from the loss that resulted from the fire. Furthermore, the testimony is undisputed that Eggeman denied any and all association with starting the fire. This leaves us to determine whether finding State Farm as an "insurer" within the definition of R.C. 2913.47(A)(3) is against the manifest weight of the evidence.
 {¶ 24} In State v. Kirkland (Apr. 9, 1998), Franklin App. No. 97APA07-0873, 1998 WL 164999, unreported, the court held that circumstantial evidence such as (1) an application for insurance through an Ohio company, (2) claims specialists based out of Columbus, Ohio, and (3) an Ohio law firm representing the out-of-state insurance company was not enough to prove that Indiana Insurance was licensed to business in Ohio. Id. at *8. The court stated, "the fact that Indiana Insurance performs the activities as noted no more establishes that Indiana Insurance is licensed to transact business in Ohio than driving a car establishes that the driver is a licensed driver." Id. at *9;
 {¶ 25} The Twelfth District Court of Appeals distinguishedKirkland in State v. Hancock (Sept. 18, 2000), 12th Dist. No. CA99-05-048, 2000 WL 1336317, unreported, holding that the actual policy issued to Hancock by the in-state insurance company and an underwriter's affidavit listing, both of which listed Hamilton County, Ohio as the company's address, and the fact that the defendant did not challenge the "insurer" issue at trial was enough to prove that Ohio Casualty Group was an "insurer" under the Ohio Revised Code. The court stated:
Appellant purchased the policy from Ohio Casualty Group toprotect property located in Ohio and made a claim for losses tothat property with the expectation that the insurance company wasauthorized under Ohio law to insure her property in the firstinstance and later reimburse her for her claimed loss. Yet,despite appellant's actions, she argues disingenuously that OhioCasualty Group was somehow not authorized to engage in thebusiness of insurance. This circumstantial evidence is of equalprobative value as direct evidence in establishing that OhioCasualty Group is licensed to sell insurance in Ohio. Although itis conceivable that Ohio Casualty Group might be engaging in theinsurance business without authorization, appellant offered noevidence to rebut the reasonable inference that Ohio CasualtyGroup is an "insurer" pursuant to R.C. Title 39.
Id. at *5.
 {¶ 26} In the case sub judice, the State did not introduce any direct evidence that State Farm was licensed to do business in Ohio. As a result, the only evidence in the record that provides some indication that State Farm is licensed to do business in Ohio is Eggeman's testimony, which states:
Raymond Eggeman: I talked to Harry Osborne the investigatorfrom State Farm and asked him how he had found out about the fireand he said that the.
 Mr. Hatcher: Excuse me?
 Raymond Eggeman: He told me that the agent that I had in town,Doddie Sellers is her name, she is the agent for State Farm.
Trial Tr. at 495.
 {¶ 27} However, using the rationale developed in Hancock,
Eggeman's own testimony that his insurance agent is located in his town, his receipt of the nearly $50,000 in insurance proceeds, and the fact that the defendant did not challenge State Farm as "insurer" at trial is sufficient evidence for us to say that a jury did not clearly lose its way or create a manifest miscarriage of justice finding that State Farm is an "insurer" pursuant to the Ohio Revised Code. See Thompkins,78 Ohio St.3d at 387.
 Aggravated Arson {¶ 28} In regards to aggravated arson, the State produced undisputed testimony that identified a grey and black Blazer SUV similar to Eggeman's at the scene of the crime prior to the fire being started. Furthermore, Eggeman's own pretrial statements were inconsistent and contradictory with his trial testimony. For example, Eggeman's statement prior to trial that he went directly home after finishing work at his brother-in-law's house is directly contradicted by evidence that he missed two phone calls during the hours he was allegedly at home informing him that his apartment duplex was on fire. Moreover, the jury had an opportunity to hear and weigh Eggeman's, as well as Pruden's testimony regarding whether Eggeman was in fact home during the time he said he was or whether he was driving back from setting the fire. Finally, the State presented expert testimony suggesting that the natural gas pipe in the apartment was intentionally broken, the fire was deliberately set, and the natural gas and fire combination posed an "extreme risk" of explosion and serious injury, which could have been "devastating" to the firefighters that arrived to battle the blaze. See Trial Tr. at 96.
 {¶ 29} In light of the evidence presented, we do not find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The verdict, therefore, was not against the manifest weight of the evidence, and the fourth assignment of error is accordingly overruled.
 Fifth and Sixth Assignments of Error The trial court erred as a matter of law in orderingrestitution in the amount of $49,547.99 to State Farm Insurance.
 The trial court erred as a matter of law in orderingreimbursement in the amount of $5,568.64 for the cost ofinvestigation and prosecution.
 {¶ 30} In these consolidated assignments of error, Eggeman argues that the trial court's order to pay State Farm $49,547.99 in restitution is contrary to the language of R.C. 2929.18(A)(1). Furthermore, Eggeman contends that the State failed to establish by a preponderance of the evidence that Eggeman had assets available to reimburse the State for the $5,568.64 in costs associated with this case's prosecution pursuant to R.C. 2929.71.
 Restitution {¶ 31} R.C. 2929.18(A)(1) states, in pertinent part:
[t]he court imposing a sentence upon an offender for a felonymay sentence the offender to any financial sanction. . . .Financial sanctions that may be imposed pursuant to this sectioninclude . . . [r]estitution by the offender to the victim of theoffender's crime . . . in an amount based on the victim'seconomic loss. * * * The court shall not require an offender torepay an insurance company for any amounts the company paid onbehalf of the offender.
 {¶ 32} For authority, Eggeman cites State v. Martin (2000),140 Ohio App.3d 326, 338, 747 N.E.2d 318, which held a trial court has authority pursuant to R.C. 2929.18(a)(1) to order restitution to a victim and a victim's insurance carrier without violating the specific language of the statute. Eggeman contends that the language precluding payment to the offender's own insurance carrier should be interpreted to mean that Eggeman should not have to repay State Farm, his own insurance company, for the insurance money it paid to Eggeman because of the apartment fire. Id. ("However, we construe this part of section (A)(1) to preclude court-ordered restitution to the offender's own insurance carrier, not the victim's insurance carrier.)
 {¶ 33} In reading Martin in light of the language and purpose of R.C. 2929.18(A)(1), we cannot conclude that an insurance company is precluded from receiving restitution from an offender when the insurance company paid the offender for the damage that the offender caused. Martin stands for the proposition that an offender may be ordered to compensate third parties as well as victims for economic loss resulting from the offense. Id. at 337. In the instant case, State Farm is not only a third party seeking reimbursement for its payout to Eggeman; State Farm is also a victim. Thus, it was within the bounds of R.C. 2929.18(A)(1) for a court to order Eggeman to pay restitution to State Farm in the amount of $49,547.99. To hold otherwise would essentially reward an offender for his own felonious acts. The fifth assignment of error is overruled.
 Reimbursement {¶ 34} R.C. 2929.71(C) states:
The Court shall set a date for a hearing on all the itemizedstatements filed with it and given to the offender or theoffender's attorney. . . . The hearing shall be held prior to thesentencing of the offender, by may be held on the same day as thesentencing. Notice of the hearing date shall be given to theoffender of the offender's attorney and to the agencies whoseitemized statements are involved. At the hearing, each agency hasthe burden of establishing by a preponderance of the evidencethat the costs set forth in its itemized statement were incurredin the investigation or prosecution of the offender or in theinvestigation of the fire or explosion involved in the case, andof establishing by a preponderance of the evidence that theoffender has assets available for the reimbursement of all or aportion of the costs.
 {¶ 35} In the case sub judice, the record reflects that both the State of Ohio and the Delphos Fire Department submitted billing information regarding the amount of time and cost each agency put in to this case, which Eggeman accepted to be true. The record, however, is unclear whether Eggeman had assets available for the reimbursement of all or part of the cost.
 {¶ 36} At the sentencing and reimbursement hearing, Eggeman testified that he normally received approximately $750 per month in rental income from the apartment duplex that was damaged by the fire. Moreover, Eggeman stated that he has not collected rent from the apartment since the fire damage. Finally, Eggeman testified that he was currently appealing a monetary award given to his wife in their divorce proceedings that followed his indictment for the charges in this case. No evidence was submitted regarding any other assets that Eggeman owned that the court may have used to find by a preponderance of the evidence that Eggeman had assets available for reimbursement. Without a finding by a preponderance of the evidence that Eggeman had assets available to reimburse the State for its expenses associated with his prosecution, the threshold of R.C. 2929.71(C) is not met.
 {¶ 37} Accordingly, the sixth assignment of error is sustained and the matter is remanded to the trial court for re-sentencing as to the issue of reimbursement.
Judgment affirmed in part and reversed in part and causeremanded.
 Cupp, J., concurs.