[Cite as *State v. Dull*, 2013-Ohio-1395.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO. 13-12-33

      v.

RONALD E. DULL, JR.,               O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 11-CR-0280

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision: April 8, 2013

APPEARANCES:

    *Scott B. Johnson* for Appellant

    *Derek W. DeVine and Heather N. Jans* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Ronald E. Dull Jr. ("Dull") brings this appeal from the judgment of the Court of Common Pleas of Seneca County finding him guilty of domestic violence. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

{¶2} On November 26, 2011, Dull and his live-in girlfriend Heather Shobe ("Shobe") went to a bar and had a few beers each. They then returned home. When they arrived at the home, Dull told Shobe that he had struck her dog when it tried to take his food. He also made a derogatory comment about one of her children. Shobe then grabbed the front of his shirt and he tried to push her away. The situation deteriorated into a physical scuffle in which Shobe was injured. Part of the scuffle was witnessed by neighbors who called the police. On January 25, 2012, the Seneca County Grand Jury indicted Dull on one count of domestic violence with a specification that Dull had previously been convicted of two or more offenses of domestic violence. The alleged acts were a violation of R.C. 2919.25(A),(D)(4) making the charge a felony of the third degree. Dull was arraigned on February 6, 2012, and entered a plea of not guilty.

{¶3} A jury trial was held on June 28, 2012. At the trial, Dull admitted that he had two prior convictions for domestic violence as claimed in the specification. However, Dull argued that he was not guilty of the current charge of domestic

violence because he was acting in self-defense.   The jury returned a verdict of guilty.    On August 7, 2012, a sentencing hearing was held.   The trial court sentenced Dull to serve twenty-four months in prison.   Dull brings this appeal from that judgment and raises the following assignment of error.

> **[Dull's] conviction with respect to his affirmative defense of self-defense was not supported by the manifest weight of the evidence.**

{¶4} Unlike sufficiency of the evidence, the question of manifest weight of the evidence does not view the evidence in a light most favorable to the prosecution.

> **Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial to support one side of the issue rather than the other.   It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.   Weight is not a question of mathematics, but depends on its *effect in inducing belief.*"**

*State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (citing Black's Law Dictionary (6 Ed.1990) 1594).   A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction.   Id. Although the appellate court acts as a thirteenth juror, it still must give due deference to the findings made by the jury.

> **The fact-finder, being the jury, occupies a superior position in determining credibility.   The fact-finder can hear and see as well**

**as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness' reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.**

*State v. Thompson* (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456.

{¶5} A review of the evidence in this case indicates that there is no doubt that Shobe was the first person to turn the argument physical when she grabbed Dull's shirt. Tr. 151. Shobe admitted that Dull attempted to get her to let go of him at that point. Tr. 151-152. However, she then testified that after that Dull "got [her] down on the porch and started kicking [her] and stepped on [her] throat." Tr. 143. Shobe testified that prior to that happening she had made no threats of physical harm to Dull. Tr. 144. She further testified that Dull had kicked her a couple of times before he walked away. Tr. 144. A second altercation occurred a few minutes after the first. Shobe testified that when she went into the house, she struck Dull. Tr. 155. After that Dull pushed Shobe down. Tr. 155.

{¶6} Two neighbors witnessed part of the first altercation. Benjamin Shank is the thirteen year old boy who called the police. Tr. 162. He testified that he heard Shobe and Dull arguing and then saw Dull on top of Shobe. Tr. 162. Tina Shank, who is Benjamin's mother, also observed part of the altercation. She testified that she heard a loud thud and saw Shobe and Dull scuffling. Tr. 171. She

further testified that Shobe was lying on the porch and it looked like Dull was choking her. Tr. 171. She also observed Dull kick her while Shobe was lying on the porch in a fetal position and telling Dull to stop. Tr. 171.

**{¶7}** In contrast, Dull testified that he never kicked or struck Shobe and that he did not stand on her throat. Tr. 25. Dull testified that Shobe had reached around him and was pulling his hair and hitting him in the back of the head. Tr. 252. To get away from her he performed a "hip toss" maneuver that he had learned in the marines which resulted in her landing on the porch. Tr. 253. He then claimed that he had used his foot as a "stop signal" so that she would not hit him anymore. Tr. 253.

**{¶8}** Following this testimony, the trial court instructed the jury on the affirmative defense of self-defense as follows.

> **The defendant claims to have acted in self-defense. To establish that he was justified in using force not likely to cause death or great bodily harm, the defendant must prove by the greater weight of the evidence that: a) he was not at fault in creating the situation given (sic) rise to the domestic violence; and b) he had reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent and/or immediate danger of bodily harm.**
>
> **Words alone do not justify the use of force. Resort to force is not justified by abusive language, verbal threats, or other words no matter how provocative.**
>
> **In deciding whether the defendant has reasonable grounds to believe and an honest belief that he was in imminent and/or**

**immediate danger of bodily harm, you must put yourself in the position of the defendant with his characteristics, his knowledge or lack of knowledge, and under the circumstances and conditions that surrounded him at the time. You must consider the conduct of [Shobe] and decide whether her actions and words caused the defendant reasonably and honestly to believe that he was about to receive bodily harm.**

**If the defendant used more force than reasonably necessary, and if the force used is greatly disproportionate to the apparent danger, then the defense of self-defense is not available.**

Tr. 299-300.

{¶9} Given all of the evidence before them, the jury members could reasonably conclude that although Shobe had started the physical confrontation, the response by Dull was excessive. Even if she pulled his hair and hit the back of his head as he claimed, the jury heard testimony that once Shobe was lying on the porch, Dull continued to kick her and put pressure on her throat. This could be seen as excessive force. The jury was properly instructed that if the amount of force was greatly disproportionate, self-defense is inapplicable. The evidence in this case does not weigh heavily against conviction and the jury verdict is not against the manifest weight of the evidence. Therefore, the assignment of error is overruled.

{¶10} Although this court has found the assignment of error to not be prejudicial, this court *sua sponte* is choosing to raise the issue of restitution. The trial court ordered Dull to pay restitution in the amount of $1,125.00 to Associated

Anesth of Toledo, Inc. and in the amount of $875.41 to Mercy St. Charles Hospital. This order is contrary to law. Restitution orders are permitted by R.C. 2929.18(A)(1).

> **(A) Except as otherwise provided in this division and in addition to imposing court costs pursuant to [R.C. 2947.23], the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section, or, in the circumstances specified in [R.C. 2929.32], may impose upon the offender a fine in accordance with that section. Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:**
>
> **(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense.**

R.C. 2929.18(A)(1). This court has previously addressed the issue of whether a trial court may order restitution be paid to a third party in the Seneca County case

*State v. Didion*, 173 Ohio App.3d 130, 2007-Ohio-4494, 877 N.E.2d 725 (3d.

Dist). In *Didion*, this court held as follows.

> **The version of R.C. 2929.18 in effect until June 1, 2004,
> specifically provided for restitution to the victim or to third
> parties. See State v. Kreischer, 109 Ohio St.3d 391, 2006-Ohio-
> 2706, 848 N.E.2d 496. However, in 125 Am.Sub.H.B. No. 52, the
> General Assembly deleted the provision allowing trial courts to
> award restitution to third parties.[1] In the General Assembly's
> final analysis of 125 Sub.H.B. No. 52, it noted that the bill
> "repeals all of the language that pertains to the restitution order
> requiring that reimbursement be made to third parties,
> including governmental agencies or persons other than
> governmental agencies, for amounts paid to or on behalf of the
> victim or any survivor of the victim for economic loss."
> (Emphasis added). In Kreischer, the Ohio Supreme Court was
> clear that its holding applied only to those versions of R.C.
> 2929.18(A)(1) effective prior to June 1, 2004. There are many
> cases from this district affirming trial courts' restitution orders
> to third parties under the prior version of R.C. 2929.18(A)(1).
> See State v. Christy, 3d Dist. No. 16–06–01, 2006-Ohio-4319,
> 2006 WL 2390273; State v. Rose, 3d Dist. No. 9–05–43, 2006-
> Ohio-3071, 2006 WL 1669135; State v. Eggeman, 3d Dist. No.
> 15–04–07, 2004-Ohio-6495, 2004 WL 2785951.**
>
> **One could argue that the statute, as amended in 125
> Am.Sub.H.B. No. 52, provides trial courts broad discretion in
> ordering financial sanctions and that the courts' discretion
> includes ordering restitution to third parties. However, in
> reading R.C. 2929.18(A)(1), (2), and (3) together, we find it clear
> that such an interpretation was not the intent of the General
> Assembly. The statute authorizes the courts to order restitution,
> fines, court costs, and/or other types of financial sanctions.**

---

[1] The relevant deleted language stated: "The order may include a requirement that reimbursement be made to third parties for amounts paid to or on behalf of the victim or any survivor of the victim for economic loss resulting from the offense. If reimbursement to third parties is required, the reimbursement shall be made to any governmental agency to repay any amounts paid by the agency to or on behalf of the victim or any survivor of the victim for economic loss resulting from the offense before any reimbursement is made to any person other than a governmental agency." R.C. 2929.18(A)(1) (effective Jan. 1, 2004).

**Other forms of financial sanctions would not include variations of the restitution, fines, or court costs provided for in the statute. R.C. 2929.18(A)(1), (2), and (3) clearly apply if the court decides to order the financial sanctions allowed in those sections. So if the trial court wishes to impose restitution as part of a defendant's sentence, it is constrained by the provisions found in R.C. 2929.18(A)(1). Likewise, if the court wishes to impose a fine, it is bound by R.C. 2929.18(A)(2), and if it wishes to impose court costs, it is bound by R.C. 2929.18(A)(3). A court's discretion is not so broad as to allow it to exceed the provisions of R.C. 2929.18(A)(1), (2), or (3) when ordering restitution, fines, or court costs.**

**The General Assembly removed the third-party language from the statute for a reason in 2004, and it has never put the language back. The judiciary has the duty to interpret the words provided by the General Assembly, not to rewrite the statute by deleting or inserting words. Erb v. Erb (2001), 91 Ohio St.3d 503, 507, 747 N.E.2d 230, citing Cleveland Elec. Illum. Co. v. Cleveland (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus. The General Assembly's amendment of a statute is "presumed to have been made to effect some purpose." Canton Malleable Iron Co. v. Porterfield (1972), 30 Ohio St.2d 163, 175, 59 O.O.2d 178, 283 N.E.2d 434, citing State ex rel. Carmean v. Bd. of Edn. (1960), 170 Ohio St. 415, 11 O.O.2d 162, 165 N.E.2d 918; Columbus–Suburban Coach Lines v. Pub. Util. Comm. (1969), 20 Ohio St.2d 125, 49 O.O.2d 445, 254 N.E.2d 8; Fyr–Fyter Co. v. Glander (1948), 150 Ohio St. 118, 37 O.O. 432, 80 N.E.2d 776; Leader v. Glander (1948), 149 Ohio St. 1, 36 O.O. 326, 77 N.E.2d 69. R.C. 2929.18(A)(1) used to allow restitution to third parties, but it no longer does. Therefore, we hold that R.C. 2929.18(A)(1) authorizes trial courts to order the payment of restitution to crime victims but not to third parties.**

*Didion, supra* at ¶¶27-29.

{¶11} In this case, the trial court did not order restitution be paid to the victim. Instead, the trial court ordered payment to two third parties. Pursuant to the plain language of R.C. 2929.18(A)(1), restitution may not be ordered payable to a third party. The trial court's judgment concerning restitution is thus contrary to law and must be reversed.

{¶12} In addition to the issue of restitution, the trial court also ordered that Dull have no contact with Shobe. This occurred despite the fact that the trial court sentenced Dull to a prison term. This court has previously held that a trial court may impose either a prison term or community control sanctions. *State v. Hartman*, 3d Dist. No. 15-10-11, 2012-Ohio-874. "Pursuant to R.C. 2929.19(B), community control sanctions and prison terms are mutually exclusive and cannot be imposed at the same time on the same count of conviction." *Id.* at ¶7. Trial courts must decide whether it is more appropriate to impose prison or community control sanctions and impose whichever option is more appropriate. *State v. Vlad*, 153 Ohio App.3d 74, 2003-Ohio-2930 (7th Dist.). A no contact order is a form of community control. *State v. Miller*, 12th Dist. No. CA2010-12-336, 2011-Ohio-3909. Thus, a trial court cannot impose both a prison term and a no contact order. *Id.* Since the trial court in this case imposed both a prison term and a no contact order, it erred by imposing both a prison term and a community control sanction.

**{¶13}** Having found error prejudicial to the defendant, the judgment of the Court of Common Pleas of Seneca County is affirmed in part and reversed in part. The matter is remanded for further proceedings in accord with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**ROGERS and SHAW, J.J., concur.**

**/jlr**