[Cite as *State v. Kaczmarek*, 2013-Ohio-5658.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO.  5-12-32

    v.

HOLLY M. KACZMAREK            O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2011 CR 327

**Judgment Reversed and Cause Remanded**

**Date of Decision:  December 23, 2013**

APPEARANCES:

    *Deborah Kovac Rump* for Appellant

    *Mark C. Miller and Alex K. Treece* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Holly M. Kaczmarek ("Kaczmarek"), appeals the judgment of the Court of Common Pleas of Hancock County, finding her guilty of insurance fraud and sentencing her to community control. Kaczmarek contends that the trial court erred by: (1) denying her motion for judgment of acquittal at the end of the State's evidence; and (2) entering a judgment that was against the manifest weight of the evidence. Kaczmarek also argues that the prosecutor in her case engaged in prosecutorial misconduct. For the reasons that follow, we reverse the trial court's judgment.

{¶2} On December 27, 2011, the Hancock County Grand Jury indicted Kaczmarek on one count of insurance fraud in violation of R.C. 2913.47(B)(1), a felony of the fifth degree. On January 11, 2012, Kaczmarek was arraigned and pleaded not guilty to the charge.

{¶3} A jury trial of this matter commenced on July 16, 2012, and ended on July 17, 2012. The State's first witness was Officer Tim Brown of the Findlay Police Department. Officer Brown testified that he was working on June 25, 2011, and was dispatched around 8:30 p.m. to Arbors Parkway, Apt. 33, for a possible unlawful entry in progress. When Officer Brown arrived, he spoke with Kaczmarek and her son. Kaczmarek told Officer Brown that when she opened the garage, she noticed that the door going into her apartment was open. When she

looked inside her apartment she had noticed that her apartment and some of her possessions had been damaged. Officer Brown then waited for Officer Eier to arrive and together they searched the apartment for possible suspects. Once it was determined that no one was inside, Officer Brown began to take photographs of all the damage that had occurred inside the apartment. These photographs were later offered into evidence.

{¶4} Officer Brown testified that he did not recall seeing any damage to Kaczmarek's door which would have indicated that someone forced his or her way into the apartment. As to the damage done to Kaczmarek's apartment, Officer Brown testified that there was Canola oil on her floor and black spray paint all over the walls, inside the refrigerator, freezer, dishwasher, and washing machine. There was also spray paint in the bathroom, on the bedroom walls, and on Kaczmarek's bed, television, and dresser. There were nail polish stains on the walls of Kaczmarek's closet and her jewelry case was opened with jewelry thrown about her floor.

{¶5} Officer Brown then testified that Kaczmarek told him that she left her apartment around 6:00 p.m. that night to pick up her son. When she came back to her apartment around 8:30 p.m., she noticed that her door was open and called the police. Kaczmarek told Officer Brown that she had purchased the black spray

paint earlier that day at a Wal-Mart and provided Officer Brown with a receipt; however, Officer Brown did not collect the receipt.

{¶6} Officer Brown also testified that Kaczmarek provided a written statement on June 27, 2011. The statement contained a section which described the incident and also listed items that had been taken or destroyed. Among the items that were stolen were rings, watches, and three different bags.

{¶7} The next witness to testify for the State was Cathy Harris, the property manager for the Arbors of Findlay. Harris testified that Kaczmarek contacted her on June 27, 2011, and told Harris that her apartment had been broken into and vandalized. Harris stated that Kaczmarek told her that she had bought the spray paint cans at Wal-Mart during the day on June 25, 2011. Harris testified that the apartment complex had to pay over $3,000 to restore Kaczmarek's apartment to its original condition.

{¶8} Detective Jay Myers of the Findlay Police Department was the next witness to testify for the State. Detective Myers testified that he was assigned to process the recovered evidence that Officer Brown collected. However, Detective Myers was not able to recover any usable fingerprints from the evidence. Detective Myers then testified that he contacted the loss prevention department of the Tiffin Avenue Wal-Mart. He then obtained the video of Kaczmarek purchasing the cans of spray paint. The transaction took place at 7:11 p.m.

**{¶9}** Detective Myers testified that Kaczmarek had told him that she had insurance through Homesite Insurance and that Patricia Reynolds was the agent handling the claim. Kaczmarek also told Detective Myers that she had received $1,000 for the jewelry that was stolen during the break in and also received some money for furniture that was damaged, although she did not disclose a specific amount. Detective Myers testified that he spoke with Reynolds and also stated that he learned that Kaczmarek had received $16,000 from Homesite Insurance. Detective Myers then confronted Kaczmarek about the inconsistency in her story about when she bought the spray paint. After being informed about the existence of the Wal-Mart video, Detective Myers testified that he and Kaczmarek had the following discussion:

> A: I told her that times weren't matching. That she kept saying it was early i[n] the morning she bought the paint, yet the video and information I received from Wal-Mart clearly states it was 7:10 p.m. Just before – shortly before the police were called and this damage occurred. She then said she remembered now what happened. She stated that she was at Wal-Mart buying the paint and [her son] called wanting a ride from the mall. So she returned to her apartment at the Arbors. She had to use the restroom. Went into the garage and left the paint on a blue tub in the garage. Then she went to pick [her son] up. Went to McDonalds. They ate, and then she returned home and found the damage.

Trial Tr., p. 237-38.

**{¶10}** The State next called Daniel Lerma, a locksmith with Bill's Lock Service. Lerma stated he looked at the lock on Kaczmarek's apartment that

Kaczmarek had told Harris was not working properly. Lerma testified that he did not see any damage to the lock and opined that the lock could not be opened from the outside without using a key or destroying the lock.

{¶11} Benjamin Wilkerson was the next witness for the State and stated that he was an Asset Protection Manager with Wal-Mart. Wilkerson testified that the video showing Kaczmarek purchasing spray paint cans at 7:11 p.m. was accurate and there was no indication of any alterations.

{¶12} Michael Hollar then testified for the State. Hollar testified that he is employed as an independent field adjuster for Apex Adjusting. Hollar clarified that he does not actually work for an insurance company, but instead acts as a third party who is hired to handle certain claims. Hollar testified that Homesite Insurance insures homes and provides renters insurance in Ohio and that he had worked on over 500 claims for Homesite Insurance in Ohio. Hollar also stated that Homesite Insurance has offices in Akron, Ohio, and in Massachusetts. Hollar also testified:

> A: No. What we're required to do is, we ask the insured to create a list of all the damaged items throughout the home. Once she creates that risk [sic] we also inform her please collect any receipts that she might have. If she's not able to collect any receipts we ask her to at least take the time to find, you know, go through if she can, get the make, model and year of any product. If she's not sure exactly the make and model but she can decide what the year is, the insurance company, they have their o[w]n department for content. They work at their own – what they have for their own product to determine.

> Q: Is the purpose there to get reimbursement for the loss?
>
> A: It is.

*Id*. at p. 295-96.

{¶13} At the close of the State's evidence, Kaczmarek moved for a Crim.R. 29 motion for acquittal. Kaczmarek argued that there were no witnesses from Homesite Insurance that testified Homesite is authorized to engage in the business of insurance in the State of Ohio. Since the State was unable to show that Homesite Insurance was licensed to operate in Ohio, it failed to prove an element of insurance fraud. The trial court denied Kaczmarek's motion stating that although "the better practice would have been to have someone from Homesite here to testify * * * there's enough evidence that can be gleaned from this to suggest that Homesite is an insurer [and] is licensed to practice in the State of Ohio." *Id*. at p. 315.

{¶14} During Kaczmarek's case-in-chief the following relevant evidence was adduced. Javier Ramos, Kaczmarek's son, testified that in the evening of June 25, 2011, he was at the Findlay Mall with a friend. They needed a ride to get home, so Ramos called his mother to pick him and his friend up. Ramos testified that his mother told him that she had to stop at her apartment before she could pick him up. Then, ten minutes later, Kaczmarek picked him up from the Findlay Mall, went to McDonalds, and then returned to Kaczmarek's apartment. When Ramos

and Kaczmarek arrived at her apartment they saw that the door was opened and realized the apartment had been vandalized. Ramos testified that his mother was panicking and crying. Kaczmarek made the 911 call but was crying so hard she had to hand Ramos the phone to complete the call.

{¶15} The defense then rested and Kaczmarek renewed her motion for acquittal, which the trial court denied.

{¶16} On July 17, 2012, the jury returned a guilty verdict on the insurance fraud charge. A pre-sentence investigation was ordered, and sentencing was originally set for September 26, 2012. At that hearing, Kaczmarek informed the court that she was no longer satisfied with her attorney's representation, and that she wanted new counsel. Kaczmarek's attorney then requested to withdraw, and that request was granted. The court continued the sentencing hearing so that Kaczmarek could meet with her new attorney.

{¶17} On October 29, 2012, a sentencing hearing was held. The court sentenced Kaczmarek to community control, with specific sanctions which required Kaczmarek serve seven days in jail and that Kaczmarek pay restitution in the amount of $16,000. A judgment entry reflecting this was filed that same day, October 29, 2012.

{¶18} Kaczmarek then timely appealed this judgment, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO CRIM.R. 29(A). THE STATE FAILED TO PROVE ESSENTIAL ELEMENTS OF THE CRIME INCLUDING THE INSURANCE COMPANY'S STATUS AS AN INSURER UNDER OHIO LAW.**

*Assignment of Error No. II*

**APPELLANT'S CONVICTION FOR INSURANCE FRAUD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. III*

**THE PROSECUTOR ENGAGED IN MISCONDUCT WHEN HE IMPROPERLY ADVISED THE JURY THAT MULTIPLE ISSUES, INCLUDING THE STATUS OF THE INSURANCE COMPANY, WERE NOT IN DISPUTE AND OTHERWISE MISSTATING THE LAW.**

{¶19} In her first assignment of error, Kaczmarek argues that the trial court erred in denying her Crim.R. 29(A) motion for acquittal. Specifically, Kaczmarek contends that the State failed to produce any evidence that Homesite Insurance was licensed to operate in Ohio. We agree.

*Standard of Review*

{¶20} Crim.R. 29(A) provides that a court must order the entry of a judgment of acquittal of a charged offense "if the evidence is insufficient to sustain a conviction of such offense[.]" However, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach

different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman,* 55 Ohio St.2d 261 (1978), syllabus. Thus, a motion for acquittal tests the sufficiency of the evidence. *State v. Tatum,* 3d Dist. Seneca No. 13–10–18, 2011–Ohio–3005, ¶ 43, citing *State v. Miley,* 114 Ohio App.3d 738, 742 (4th Dist.1996).

**{¶21}** When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe,* 105 Ohio St.3d 384, 2005–Ohio–2282, ¶ 47. Sufficiency is a test of adequacy. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997), *superseded by constitutional amendment on other grounds as stated in State v. Smith,* 80 Ohio St.3d 89 (1997). Accordingly, the question of whether the offered evidence is sufficient to sustain a verdict is a question of law. *State v. Wingate*, 9th Dist. Summit No. 26433, 2013-Ohio-2079, ¶ 4.

*R.C. 2913.47(B)(1)*

**{¶22}** Kaczmarek was charged with insurance fraud in violation of R.C. 2913.47(B)(1) which provides:

> (B)  No person, with purpose to defraud or knowing that the person is facilitating a fraud, shall * * *:

> (1) Present to, or cause to be presented to, an insurer any written or oral statement that is part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or a claim for any other benefit pursuant to a policy, knowing that the statement, or any part of the statement, is false or deceptive[.]

Further, "insurer" is defined:

> [A]ny person that is authorized to engage in the business of insurance in this state under Title XXXIX of the Revised Code, the Ohio fair plan underwriting association created under section 3929.43 of the Revised Code, any health insuring corporation, and any legal entity that is self-insured and provides benefits to its employees or members.

R.C. 2913.47(A)(3).

*Recapitulation of Evidence*

{¶23} Bearing this statutory language in mind, we turn our attention to the evidence presented at trial. The record reveals that the State did not present sufficient evidence to overcome Kaczmarek's motion of acquittal.

{¶24} The only testimony that was elicited regarding whether Homesite was authorized to engage in the business of insurance of Ohio came from Michael Hollar, a claims adjuster for Apex Adjusting, not Homesite Insurance. He merely testified that he has handled claims on behalf of Homesite Insurance before and that he knows Homesite Insurance has an office in Akron, Ohio. However, there was no representative of the company called to testify, and no certification of registration with the Ohio Secretary of State demonstrating licensing in Ohio. The State relied on circumstantial evidence that Homesite, in fact, conducted business

in Ohio. However, the test required by the statute is whether the company is, in fact, *authorized*, to conduct business in this state.[1] This case is on all fours with a unanimous decision of the Tenth District Court of Appeals (authored by the late Judge Peggy Bryant).

> The state's evidence falls short of proving the necessary factors establishing that Indiana Insurance is an "insurer" as defined in R.C. 2913.47(A)(3). Indeed, the fact that Indiana Insurance performs the activities as noted no more establishes that Indiana Insurance is licensed to transact business in Ohio than driving a car establishes that the driver is a licensed driver. Each of the noted activities may be performed by a non-licensed insurer, provided the entity successfully avoids detection under Ohio's insurance laws.

(Citation omitted.) *State v. Kirkland,* 10th Dist. Franklin No. 97APA07-873, 1998 WL 164999, * 9 (Apr. 9, 1998). Accordingly, the State's evidence on this issue is woefully inadequate.

{¶25} While the dissent attempts to rely on our previous decision of *State v. Eggeman*, 3d Dist. Van Wert No. 15-04-07, 2004-Ohio-6495, we find it distinguishable from the present case. First, in *Eggeman*, the defendant did not properly preserve his Crim.R. 29 motion, and thus, we did not address whether the State presented sufficient evidence to convict the defendant of insurance fraud. *Eggeman* at ¶ 21. Instead, this court only looked at whether the jury's verdict was

---

[1] The inclusion of the definition of "insurer" in R.C. 2913.47 demonstrates that satisfying the definition of insurer is an element of insurance fraud for two reasons. First, the exclusive subject of R.C. 2913.47 is insurance fraud; therefore, the above definition of "insurer" cannot refer to any other offense. Second, the inclusion of the definition in this section indicates that the legislature intended that the insurer protected by R.C. 2913.47 belong to one of the four enumerated groups of entities. Holding that the crime of insurance fraud does not require proof that the defrauded entity was an "insurer" as defined under this section, would make division (A)(3) of R.C. 2913.47 meaningless.

against the manifest weight of the evidence, which is a separate and distinct test than a test from sufficiency. *See State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 193 ("A claim that a jury verdict is against the manifest weight of the evidence involves a separate and distinct test that is much broader [than the test for sufficiency].").

{¶26} Secondly, in *Eggeman*, this court held that there was no manifest miscarriage of justice because the State had presented evidence that showed: (1) the defendant's insurance agent was located in his town; and (2) the defendant's receipt of insurance proceeds. *Eggeman* at ¶ 27. This court also considered the fact the defendant never challenged the "insurer" issue at trial. *Id*. Here, there was no testimony that Kaczmarek's insurance agent was located in Findlay, Ohio. To the contrary, testimony was elicited from Detective Myers that Kaczmarek's insurance agent, Patricia Reynolds, was "out of Boston[, Massachusetts]." Trial Tr., p. 231. Also, Kaczmarek repeatedly challenged whether Homesite Insurance is a proper insurer as defined by the Ohio Revised Code.

{¶27} Further, in *State v. Hancock*, 12th Dist. Clermont No. CA99-05-048, 2000 WL 1336317 (Sept. 18, 2000), the decision this court relied upon in *Eggeman*, is likewise distinguishable from Kaczmarek's case. In *Hancock*, the court relied on the fact that: (1) the insurance company in question was a domestic company rather than an out of-state insurance company; and (2) the State offered

the actual policy of the insurance company and an underwriter's affidavit, which *both* listed the insurance company's address as Hamilton, Ohio. *Hancock* at * 4. Here, the State did not offer Kaczmarek's policy into evidence. The State also decided not to offer any evidence which showed an Ohio address for Homesite Insurance.[2] While the dissent believes Hollar's report is sufficient evidence to show Homesite was licensed to do business in Ohio, we simply disagree. Unlike the policy or affidavit submitted in *Hancock*, Hollar's report does not have any address listed for Homesite Insurance and is unhelpful and irrelevant in determining whether Homesite Insurance was authorized to conduct business in Ohio.

{¶28} Therefore, while the State may have produced some circumstantial evidence that Homesite Insurance conducted business in Ohio, it failed to produce sufficient evidence that would prove Homesite Insurance was *authorized* to conduct business in Ohio.

{¶29} Furthermore, the State failed to present any evidence as to any fraudulent claim *allegedly* submitted to the *alleged* insurer. No document was produced that demonstrated what claims had been submitted or which portion of the claims was supposedly fraudulent. The State wants to rely on the fact that

---

[2] The mere fact that an insurance company lists an Ohio address on its stationary, on its own, is insufficient evidence to prove that the same insurance company is authorized to do business in Ohio. We are only highlighting the differences in the present case with *Hancock* to emphasize how the record is devoid of any evidence which shows Homesite Insurance was authorized to conduct business in Ohio.

-14-

Kaczmarek admitted to receiving $1,000 for stolen jewelry. However, the State failed to present any evidence which would show that Kaczmarek's jewelry was not, in fact, lost or stolen. The State then attempts to bolster this admission with Detective Myers' testimony he spoke with Homesite Insurance and learned that Kaczmarek received $16,000 from Homesite. First, this is hearsay, inadmissible, and unsubstantiated. Secondly, if the Detective Myers was able to speak with the Homesite Insurance, why not request that it produce a copy of the claim, proof of payment, and a witness for trial?

{¶30} Even if one accepts that Kaczmarek vandalized her own apartment, there is no evidence of a claim being submitted for damage caused by the vandalism.

{¶31} Accordingly, we sustain Kaczmarek's first assignment of error.

### *Assignments of Error II & III*

{¶32} In light of our decision that the trial court erred when it overruled Kaczmarek's motion for acquittal, Kaczmarek's second and third assignments of error have been rendered moot, and we decline to address them. App.R. 12(A)(1)(c).

{¶33} Having found error prejudicial to Kaczmarek in the particulars assigned and argued, we reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.

Case No. 5-12-32

*Judgment Reversed and*
*Cause Remanded*

**WILLAMOWSKI, J., concurs.**

**SHAW, J., DISSENTS.**

{¶30} I respectfully dissent from the majority's opinion for two reasons. First, I would find that circumstantial evidence is as probative as direct on the issue of whether Homesite Home Insurance was licensed to do business in the State of Ohio, and that the State produced a significant amount of circumstantial evidence regarding that issue. Second, I would find that the State also produced a significant amount of circumstantial evidence regarding whether Kaczmarek submitted a fraudulent claim to Homesite.

{¶31} The majority cites *State v. Kirkland*, 10th Dist. Franklin No. 97APA07-873 (Apr. 9, 1998), for the proposition that circumstantial evidence is disfavored in proving whether an insurance company is licensed to do business in the State of Ohio. In *State v. Eggeman*, 3d Dist. No. 5-04-07, 2004-Ohio-6495, ¶¶ 24-27, we distinguished *Kirkland*, effectively finding that circumstantial evidence was as probative as direct on this issue. *See Eggeman* at ¶¶ 24-27 (wherein we cited favorably the Twelfth District Court of Appeals decision in *State v. Hancock*, No. CA99-05-048, 2000 WL 1336317 (Sept. 18, 2000), which also distinguished *Kirkland* and found that circumstantial evidence was as probative as direct on this

-16-

issue). I would follow our prior holding in *Eggeman*, and the Twelfth District's decision in *Hancock*, and find that circumstantial evidence is as probative as direct evidence on the issue of whether an insurance company is licensed to do business in the State of Ohio.

{¶32} In this case, the State produced a significant amount of circumstantial evidence as to whether Homesite Home Insurance was licensed to do business in the State of Ohio. Michael Hollar testified that he was an independent insurance adjuster that had worked on over 500 claims in Ohio on behalf of Homesite. (Tr. at 290). Hollar testified that Homesite insured homeowners and renters in Ohio, and that Homesite covered Kaczmarek in this case. (*Id.* at 291). Hollar also testified that Homesite had an office in Akron, Ohio. (*Id.*)

{¶33} In addition to Hollar's testimony, Hollar's report was introduced into evidence and that report contained a claim number for the "Insured: Holly [Kaczmarek]," a policy number, a date of loss, and a location in Findlay Ohio, all indicating that there was effective coverage for Kaczmarek in Ohio. (State's Ex. 35). The report also listed the "applicable coverages," and the effective dates of the policy. (*Id.*)

{¶34} The trial court considered all of this evidence in overruling Kaczmarek's Crim.R. 29 motion, and I would find that this evidence is sufficient

for a factfinder to infer and to determine beyond a reasonable doubt that Homesite was licensed to do business in the State of Ohio.

{¶35} Next, I also disagree with the majority's finding that the State produced insufficient evidence regarding whether a fraudulent claim was submitted to Homesite. Michael Hollar testified that he worked the "claim" after being sent a file for a vandalism/theft claim by Homesite. A jury could properly infer from that fact that a claim was submitted.

{¶36} Moreover, Detective Myers testified that he spoke with the insurance company and learned that Kaczmarek received $16,000 from the company. (Tr. at 240). Detective Myers also testified that Kaczmarek herself informed him she had received $1,000 for her "stolen" jewelry and an undisclosed amount for the remaining damage. (*Id.*) In addition, Detective Myers testified that he had a conversation with Kaczmarek, wherein Kaczmarek informed him that she only had $3,000 left from the insurance company, which would at the very least allow the jury to presume Kaczmarek had been paid $3,000 by the insurance company. (*Id.*)

{¶37} All of this testimony points to Kaczmarek being paid from an insurance claim. It seems entirely logical that if a claim had been worked by an agent (Hollar), and paid out as Kaczmarek indicated to Detective Myers, that the claim had been submitted.

{¶38} While it is unclear whether Kaczmarek vandalized her own apartment, the evidence seems reasonably clear that if she did not do it herself she knew about it. Kaczmarek lied to investigators and to her landlord repeatedly and throughout the investigation. She also purchased the spray paint cans used in the "vandalism" only 82 minutes before she called 9-1-1 to report the vandalism.

{¶39} Therefore, I would find that sufficient evidence was introduced for a jury to conclude that Kaczmarek had submitted a fraudulent claim and was paid out on that claim.

{¶40} Accordingly, I would overrule Kaczmarek's assignment of error and proceed to address the remaining assignments of error.

**/jlr**